Martin A. Sosland (18855645)
Stephen A. Youngman (22226600)
WEIL, GOTSHAL & MANGES LLP
200 Crescent Court, Suite 300
Dallas, Texas 75201
Telephone: (214) 746-7700
Facsimile: (214) 746-7777

-and-

Gary T. Holtzer (*pro hac vice* pending)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and
Debtors in Possession

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

|  |  |  |
|---|---|---|
| | § | |
| | § | |
| In re | § | **Chapter 11** |
| | § | |
| **PILGRIM'S PRIDE CORPORATION**, *et al.*, | § | **Case No. 08-45664 (DML)** |
| | § | |
| | § | |
| **Debtors.** | § | |
| | § | |
| | § | **JOINT ADMINISTRATION REQUESTED** |

**APPLICATION FOR AN ORDER PURSUANT TO SECTIONS 327(a) AND 328(a) OF THE BANKRUPTCY CODE AND RULES 2014 AND 2016 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AUTHORIZING THE EMPLOYMENT AND RETENTION OF LAZARD FRERES & CO. LLC AS INVESTMENT BANKER FOR THE DEBTORS *NUNC PRO TUNC* TO THE COMMENCEMENT DATE**

**A HEARING WILL BE CONDUCTED ON THIS MATTER ON A DATE TO BE NOTICED AT THE ELDON B. MAHON U.S. COURTHOUSE, 501 W. TENTH STREET FORT WORTH, TEXAS.**

**IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TWENTY-THREE DAYS FROM THE DATE YOU WERE SERVED WITH THIS PLEADING. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Pilgrim's Pride Corporation ("PPC") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (collectively, the "Debtors"),[1] respectfully represent:

### Background

1.      On the date hereof (the "Commencement Date"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      Contemporaneously herewith, the Debtors have filed a motion seeking joint administration of their chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

### Pilgrim's Pride's Businesses

3.      PPC, together with its debtor and non-debtor subsidiaries (collectively, "Pilgrim's Pride"), has one of the best brand names in the chicken industry.  It is one of the largest producers of chicken in the United States and the second-largest producer in Mexico.

---

[1] The Debtors in these cases are PPC; PFS Distribution Company; PPC Transportation Company; To-Ricos, Ltd.; To-Ricos Distribution, Ltd.; Pilgrim's Pride Corporation of West Virginia, Inc.; and PPC Marketing, Ltd.

Pilgrim's Pride has operations throughout the continental United States, Puerto Rico, and Mexico.  Based on the total annual chicken production in 2007 in the United States, the Debtors estimate that Pilgrim's Pride has the highest market share in the United States.  Formed in 1946 as a retail feed store partnership between Lonnie A. "Bo" Pilgrim and his brother, Aubrey E. Pilgrim, PPC has been a publicly traded company since 1986.

4.        Through vertical integration, Pilgrim's Pride manages the breeding, hatching and growing of chickens.  Pilgrim's Pride also manages the processing, preparation, packaging, sale and distribution of its product lines, which Pilgrim's Pride believes has made it one of the highest quality, lowest-cost producers of chicken in North America.  In the continental United States, Pilgrim's Pride produces both prepared chicken products and fresh chicken products.  In Mexico and Puerto Rico, it produces exclusively fresh chicken products.

5.        Although Pilgrim's Pride primarily produces chicken products, its operations also include, inter alia, pork breeder and growout operations and operation of two captive insurance companies, all through non-debtors.  Pilgrim's Pride's products are sold to foodservice, retail and frozen entrée customers, distributed primarily through retailers, foodservice distributors and restaurants.

6.        As of November 25, 2008, Pilgrim's Pride had approximately 47,900 employees in North America.  As of September 27, 2008, its unaudited consolidated financial statements reflected $8.5 billion of revenue for the prior 12-month period, assets of approximately $3.3 billion, and liabilities of approximately $3 billion.

**Jurisdiction**

7.       This Court has jurisdiction to consider this matter pursuant to 28 U.S.C.

§§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper

before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Relief Requested**

8.       The Debtors seek authorization, pursuant to sections 327(a) and 328(a) of

the Bankruptcy Code and Bankruptcy Rules 2014(a) and 2016, to employ and retain Lazard

Frères & Co. LLC ("Lazard") as investment banker for the Debtors nunc pro tunc to the

Commencement Date, for the purpose of providing general restructuring advice and investment

banking services during these chapter 11 cases.  In support of this Application, the Debtors

submit the declaration of Daniel M. Aronson, a managing director of Lazard (the "Aronson

Declaration"), attached hereto as Exhibit A and incorporated by reference herein.

**Lazard**

9.       Lazard is an investment banking firm focused on providing investment

banking, financial advice, and transaction execution on behalf of its clients.  Lazard's broad

range of corporate advisory services includes general financial advice, corporate restructurings,

domestic and cross-border mergers and acquisitions, divestitures, privatizations, special

committee assignments, takeover defenses, and strategic partnerships/joint ventures.

10.      In addition, Lazard has a significant asset management business.  Lazard

is registered as a broker-dealer with the United States Securities and Exchange Commission.

11.      Prior to retaining Lazard, the Debtors' senior management interviewed

senior personnel of and considered proposals from other investment banking firms. The Debtors

evaluated each firm on a number of criteria, including: the overall restructuring experience of

each firm and their professionals; the overall financial advisory and investment banking

capabilities of such firm; the firm's experience in advising large companies in chapter 11; the likely attention of the senior personnel of the firm; and the compensation to be charged.  After due consideration of the above and as an exercise of their business judgment, the Debtors concluded that Lazard was best qualified to provide financial advisory services to the Debtors at a reasonable level of compensation.

12.     The Debtors have selected Lazard as their financial advisor based upon, among other things, (a) the Debtors' need to retain a financial advisory firm to provide advice with respect to the Debtors' restructuring activities and (b) Lazard's extensive experience and excellent reputation in providing financial advisory and investment banking services in complex chapter 11 cases such as these chapter 11 cases.

13.     Prior to the Commencement Date, on September 28, 2008, the Debtors engaged Lazard to provide general investment banking and financial advice in connection with the Debtors' attempts to complete a strategic restructuring, reorganization, and/or recapitalization and to prepare for the commencement of these chapter 11 cases.

14.     In providing prepetition services to the Debtors in connection with these matters, Lazard's professionals have worked closely with the Debtors' management and other professionals and have become well-acquainted with the Debtors' operations, debt structure, creditors, business and operations, and related matters.  Accordingly, Lazard has developed significant relevant experience and expertise regarding the Debtors that will assist it in providing effective and efficient services in these chapter 11 cases.

15.     In addition to Lazard's understanding of the Debtors' financial history, business operations, and the industry in which the Debtors operate, Lazard and its senior professionals have extensive experience in the reorganization and restructuring of troubled companies, both out of court and in chapter 11 proceedings.  Lazard's employees have advised

debtors, creditors, equity constituencies, and government agencies in many complex financial reorganizations. Since 1990, these professionals have been involved in over 250 restructurings representing billions of dollars of restructured debt and assets.

16.     The professionals of Lazard have been employed as financial advisors and as investment bankers in a number of troubled company situations, including the chapter 11 cases of *In re Tropicana, LLC*, Case No. 08-10856 (KJC) (Bankr. D. Del. May 30, 2008); *In re New Century TRS Holdings, Inc.*, Case No. 07-10416 (KJC) (Bankr. D. Del. Apr. 2, 2007); *In re NorthWestern Corp.*, Case No. 03-12872 (KJC) (Bankr. D. Del. Oct. 10, 2003); *In re Metrocall, Inc.*, Case No. 02-11579 (CGC) (Bankr. D. Del. Jun. 3, 2002); *In re Kaiser Aluminum Corp.*, Case No. 02-10429 (JKF) (Bankr. D. Del. Feb. 12, 2002); *In re Hayes Lemmerz Int'l, Inc.*, Case No. 01-11490 (MFW) (Bankr. D. Del. Dec. 5, 2001); *In re Exodus Communications, Inc.*, Case No. 01-10539 (PJW) (Bankr. D. Del Sep. 26, 2001); *In re Armstrong World Indus., Inc.*, Case No. 00-04471 (RJN) (Bankr. D. Del. Feb. 6, 2001); *In re Movie Gallery, Inc.*, Case No. 07-33849 (DOT) (Bankr. E.D. Va. Oct. 18, 2007); *In re Tower Automotive, Inc.*, Case No. 05-10578 (ALG) (Bankr. S.D.N.Y. June 15, 2005); *In re Parmalat U.S.A Corp.*, Case No. 04-11139 (RDD) (Bankr. S.D.N.Y. Apr. 22, 2004); *In re THCR/LP Corp.*, Case No. 04-46898 (JHW) (Bankr. D.N.J. Mar. 17, 2005).

17.     An experienced investment bank and financial advisor such as Lazard fulfills a critical need that complements the services offered by the Debtors' other restructuring professionals. The Debtors believe they require the services of a capable and experienced investment banking and financial advisory firm such as Lazard because, among other reasons, Lazard's resources and capabilities, together with its prepetition experience advising the Debtors, are crucial to the Debtors' success in these chapter 11 cases.

## Services to Be Provided

18.     Lazard will assist in the evaluation of strategic alternatives and render

general restructuring advice and investment banking services to the Debtors in connection with

these chapter 11 cases, as stated in the engagement letter, which is attached hereto as Exhibit B

(the "Engagement Letter"), including,[2] as reasonably requested:

(a)     Reviewing and analyzing the Debtors' business, operations and financial projections;

(b)     Evaluating the Debtors' potential debt capacity in light of its projected cash flows;

(c)     Assisting in the determination of a capital structure for the Debtors;

(d)     Assisting in the determination of a range of values for the Debtors on a going concern basis;

(e)     Advising the Debtors on tactics and strategies for negotiating with the stakeholders;

(f)     Rendering financial advice to the Debtors and participating in meetings or negotiations with the stakeholders and/or rating agencies or other appropriate parties in connection with any Restructuring[3];

(g)     Advising the Debtors on the timing, nature, and terms of new securities, other consideration or other inducements to be offered pursuant to the Restructuring;

(h)     Assisting the Debtors in preparing documentation within Lazard's area of expertise that is required in connection with the Restructuring;

(i)     Assisting the Debtors in identifying and evaluating candidates for a potential Sale Transaction, advising the Debtors in connection with negotiations and aiding in the consummation of a Sale Transaction;

(j)     Attending meetings of the Debtors' Board of Directors and its committees with respect to matters on which Lazard has been engaged to advise the Debtors, and providing the Debtors' Board of Directors and its committees with advice with respect to such matters;

---

[2] This summary is solely for the reference of the Court and parties in interest. To the extent that this summary and the terms of the Engagement Letter are inconsistent, the terms of the Engagement Letter shall control.

[3] Capitalized terms used in this Application but not otherwise defined herein shall have the meanings set forth in the Engagement Letter.

(k)     Advising and assisting the Debtors in evaluating and obtaining potential DIP Financing;

(l)     Providing testimony, as necessary, with respect to matters on which Lazard has been engaged to advise the Debtors in any proceeding before the Bankruptcy Court; and

(m)     Providing the Debtors with other financial restructuring advice.

## Professional Compensation

19.     Lazard's decision to continue with this engagement to advise and assist the Debtors is conditioned upon its ability to be retained in accordance with its customary terms and conditions of employment and compensated for its services and reimbursed for the expenses it incurs in accordance with its customary billing practices.

20.     Lazard intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of the United States Bankruptcy Court for the Northern District of Texas (the "Local Rules"), and any other applicable procedures and orders of the Court and consistent with the proposed compensation set forth in the Engagement Letter (the "Compensation Structure").  Further, because the Debtors are seeking to retain Lazard under section 328(a) of the Bankruptcy Code, the Debtors believe that Lazard's compensation should not be subject to any additional standard of review under section 330 of the Bankruptcy Code.

21.     In summary, the Compensation Structure provides for the following compensation to Lazard, in relevant part:[4]

(a)     A monthly fee of $250,000 (the "Monthly Fee"), payable on execution of the Engagement Letter and on the same day of each month thereafter until the earlier of the completion of the Restructuring or the termination of Lazard's engagement pursuant to Section 10 of the Engagement Letter.

---

[4] This summary is solely for the reference of the Court and parties in interest.  Reference is made to the Engagement Letter for the full terms of the Compensation Structure.  To the extent that this summary and the terms of the Engagement Letter are inconsistent, the terms of the Engagement Letter shall control.

One-half of the Monthly Fees paid in respect of any months following the fourth month of the engagement shall be credited against the Restructuring Fee (i.e. after $1 million in Monthly Fees have been paid, $125,000 (per month) of any subsequent Monthly Fees paid shall be credited against the Restructuring Fee).

(b)    In the event that a Restructuring or a Majority Sale Transaction is consummated, a fee of $6.5 million, payable upon the consummation of such Restructuring or Majority Sale Transaction (the "Restructuring Fee").

(c)    In the event of any Minority Asset Sale Transaction, a fee, payable upon consummation of such Minority Asset Sale Transaction, based on the Aggregate Consideration calculated as set forth in Schedule I of the Engagement Letter.  Payment of such fees shall be credited against the Restructuring Fee.

(d)    In connection with any debtor-in-possession financing received by the Debtors, a fee of $1 million (a "DIP Financing Fee"), payable upon the execution of a commitment letter or other similar document (including, without limitation, the transaction agreement, if no other document is executed prior thereto) in respect of such financing.  Payment of such fee shall be credited against the Restructuring Fee.

(e)    The ability to credit certain fees against others shall only apply if all the fees provided for are approved in their entirety by this Court.

(f)    In addition to any fees that may be payable to Lazard and, regardless of whether any transaction occurs, prompt reimbursement to Lazard for all: (A) reasonable expenses (including travel and lodging, data processing and communications charges, courier services and other appropriate expenditures) and (B) other reasonable fees and expenses, including expenses of counsel, if any.

(g)    The indemnification, contribution and related obligations of the Indemnification Agreement (as further discussed below).

22.    The Compensation Structure is consistent with and typical of compensation arrangements entered into by Lazard and other comparable firms in connection with the rendering of similar services under similar circumstances.  In determining the Compensation Structure to be paid to Lazard and the reasonableness of such compensation, the Debtors compared Lazard's fee proposal to other proposals received by the Debtors in the investment banker selection process.  After such comparison, the Debtors believe, as does

Lazard, that the Compensation Structure is in fact reasonable, market-based, and designed to compensate Lazard for its work fairly and to cover fixed and routine overhead expenses.

23. Lazard's strategic and financial expertise as well as its capital markets knowledge, financing skills, restructuring capabilities, and mergers and acquisitions expertise, some or all of which may be required by the Debtors during the term of Lazard's engagement, were all important factors in determining the Compensation Structure. The Debtors believe that the ultimate benefit of Lazard's services hereunder cannot be measured by reference to the number of hours to be expended by Lazard's professionals in the performance of such services. Indeed, the Debtors and Lazard have agreed upon the Compensation Structure in anticipation that a substantial commitment of professional time and effort will be required of Lazard and its professionals in connection with these chapter 11 cases and in light of the fact that (a) such commitment may foreclose other opportunities for Lazard and (b) the actual time and commitment required of Lazard and its professionals to perform its services under the Engagement Letter may vary substantially from week to week and month to month, creating "peak load" issues for Lazard.

24. Lazard will maintain records in support of costs and expenses incurred in connection with the rendering of its services in these chapter 11 cases. As Lazard's compensation will be calculated and paid based on certain transaction fees (in addition to Monthly Fees), Lazard requests that it not be required to file time records in accordance with United States Trustee Guidelines. Instead, notwithstanding that Lazard does not charge for its services on an hourly basis, Lazard will nonetheless provide to this Court, as requested, records (in summary format) that contain reasonably detailed descriptions of its services provided to the Debtors, the approximate time expended in providing those services and the individuals who provided those services.

**Indemnification, Contribution, and Reimbursement Provisions**

25.     The Debtors have agreed to indemnify, make certain contributions to and reimburse Lazard and related entities in accordance with the provisions set forth in the indemnification agreement between Lazard and the Debtors (the "Indemnification Agreement"), attached hereto as Exhibit C.

26.     The indemnification, contribution, and reimbursement provisions reflected in the Indemnification Agreement are customary and reasonable terms of consideration for financial advisors and investment bankers such as Lazard for proceedings both out of court and in chapter 11 cases.  The terms of the Indemnification Agreement and the Engagement Letter were fully negotiated between the Debtors and Lazard at arm's-length and the Debtors respectfully submit that the Indemnification Agreement and the Engagement Letter are reasonable and in the best interests of the Debtors, their estates, and creditors.

27.     Accordingly, as part of this Application, the Debtors request that the Court approve the Indemnification Agreement.

**No Duplication of Services**

28.     The Debtors intend that the services of Lazard will complement, and not duplicate, the services to be rendered by William Snyder of CRG Partners Group LLC, or any other professional retained in these chapter 11 cases.  Lazard understands that the Debtors have retained and may retain additional professionals during the term of the engagement and will work cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtors.

**Lazard's Disinterestedness**

29.     To the best of the Debtors' knowledge, Lazard (a) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code and (b) does not hold or

represent an interest materially adverse to the Debtors' estates.  Lazard has reviewed its

databases and, as further described in the Aronson Declaration, provided disclosure regarding

engagements it may have had since 2005 with potential parties in interest, which such

engagements regard matters that are unrelated to the Debtors or these cases.  To the extent that

Lazard discovers any additional material relationships bearing on the matters described in the

Aronson Declaration during the period of Lazard's retention, Lazard will use reasonable efforts

to supplement the information provided in the Aronson Declaration.

        30.     Prior to the Commencement Date, the Debtors have paid Lazard

$750,000.00  in full payment of the Monthly Fees payable to date and have reimbursed Lazard

for $284.49 in expenses billed to the Debtors on October 23, 2008.  In addition, the Debtors paid

Lazard $1,000,000.00 for the DIP Financing Fee associated with the pending debtor in

possession financing.  The Debtors also provided Lazard with a $15,000.00 retainer for

reimbursement of Lazard's expenses incurred but not yet billed to the Debtors (due to the need to

process and/or receive invoices or other typical delays).  Any portion of this retainer payment not

used to reimburse Lazard for its prepetition expenses will be detailed in Lazard's first interim fee

application, and such portion (if any) shall be credited towards Lazard's postpetition fees and/or

expenses as allowed by the Court, and, if instead further payment is required to reimburse Lazard

for its unbilled prepetition expenses, Lazard will apply for such reimbursement in its interim fee

application.  Lazard has received no other compensation from the Debtors pursuant to the

Engagement Letter.  As of the Commencement Date, Lazard did not hold a prepetition claim

against the Debtors for services rendered in connection with the engagement.

### Basis for Relief

        31.     Section 328 of the Bankruptcy Code permits the employment and

retention of Lazard pursuant to the terms in the Engagement Letter and Indemnification

Agreement.  The Debtors seek approval of the Engagement Letter and Compensation Structure contained therein pursuant to section 328(a) of the Bankruptcy Code, which provides, in relevant part, that the Debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis . . . ."  11 U.S.C. § 328(a).  Accordingly, section 328 permits the compensation of professionals, including investment bankers and financial advisors, on flexible terms that reflect the nature of their services and market conditions.  As the United States Court of Appeals for the Fifth Circuit recognized in *Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum (In re  Nat'l Gypsum Co.)*:

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done.  That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc.  Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

123 F.3d 861, 862 (5th Cir. 1997) (internal citations and emphasis omitted).

32.     Furthermore, under the enacted Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, certain modifications were made to section 328(a), which now provides as follows:

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis.

*See* 11 U.S.C. § 328(a). Section 328(a), as amended, now makes clear that debtors may retain, subject to bankruptcy court approval, a professional on a fee basis such as the Compensation Structure with Lazard as proposed by the Debtors herein.

33.    As set forth above, notwithstanding approval of the Engagement Letter under section 328 of the Bankruptcy Code, Lazard intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of the Court and consistent with the proposed compensation set forth in the Engagement Letter.

34.    The Debtors believe that the Compensation Structure reflects appropriately the nature and scope of services to be provided by Lazard, Lazard's substantial experience with respect to investment banking and financial advisory services and the fee structures typically utilized by Lazard and other leading investment banks and financial advisors that do not bill their clients on an hourly basis.

35.    Indeed, similar fixed and contingency fee arrangements in other large chapter 11 cases have been routinely approved and implemented by bankruptcy courts. *See, e.g., In re FLYi, Inc.*, Case No. 05-20011 (MFW) (Bankr. D. Del. Jan. 17, 2006) (order authorizing retention of Miller Buckfire & Co., LLC on substantially the same terms); *In re Foamex Int'l, Inc.*, Case No. 05-12685 (PJW) (Bankr. D. Del. Oct. 17, 2005) (order authorizing retention of Miller Buckfire & Co., LLC on substantially the same terms); *In re Oakwood Homes Corp.*, Case No. 02-13396 (PJW) (Bankr. D. Del. July 21, 2003) (order authorizing retention of Miller Buckfire & Co., LLC on similar terms); *In re Kaiser Aluminum Corp.*, No. 02-10429 (JKF) (Bankr. D. Del. Mar. 19, 2002) (authorizing retention of Lazard Frères & Co. LLC and

subjecting compensation to same standard of review); *In re Trans World Airlines, Inc.*,

Case No. 01-0056 (PJW) (Bankr. D. Del. Jan. 26, 2001) (authorizing retention of Rothschild,

Inc., as financial advisors for debtors, under sections 327(a) and 328(a) of the Bankruptcy Code);

*In re Covad Comm. Group, Inc.*, No. 01-10167 (JJF) (Bankr. D. Del. Nov. 21, 2001) (authorizing

retention of Lazard Frères & Co. LLC with compensation subject to standard of review set forth

in section 328(a)); *In re Harnischfeger Indus.*, No. 99-02171 (PJW) (Bankr. D. Del. Feb. 8,

2000) (authorizing retention of The Blackstone Group L.P. as investment bankers to debtors).[5]

36.     Moreover, the Debtors believe that the terms of the Indemnification

Agreement are reasonable and customary for financial advisory and investment banking

engagements, both out-of-court and in chapter 11 proceedings.  Similar indemnification

arrangements have been approved and implemented in other large chapter 11 cases by

bankruptcy courts.  *See e.g., In re New Century TRS Holdings, Inc.*, Case No. 07-10416 (KJC)

(Bankr. D. Del. Apr. 26, 2007); *In re FLYi, Inc.*, Case No. 05-20011 (MFW) (Bankr. D. Del.

Jan. 17, 2006); *In re Foamex Int'l, Inc.,* Case No. 05-12685 (PJW) (Bankr. D. Del. Oct. 17,

2005); *In re United Artists Theatre Company*, No. 00-3514-SLR (Bankr. D. Del. Dec. 1, 2000)

(order authorizing indemnification of Houlihan, Lokey by debtors); *In re Joan & David Halpern,*

*Inc.,* 248 B.R. 43 (Bankr. S.D.N.Y. 2000), *aff'd*, 2000 WL 1800690 (S.D.N.Y. Dec. 6, 2000); *In*

*re Comdisco, Inc.*, No 02-C-1174 (N.D. Ill. September 23, 2002) (affirming order authorizing

indemnification of Lazard Frères & Co. LLC and Rothschild, Inc. by debtors and official

committee of unsecured creditors); *In re Burlington Industries, Inc.*, No. 01-11282 (RJN)

(Bankr. D. Del. May 21, 2003) (order authorizing retention of MBLY on similar terms); *In re*

*Oakwood Homes Corporation*, No. 02-13396 (PJW) (Bankr. D. Del. July 21, 2003) (order

---

[5] Because of the voluminous nature of the unreported orders cited herein, they are not attached to this
Application.  Copies of these orders are available upon request from Debtors' counsel.

authorizing retention of MBLY on similar terms); *In re PC Landing Corp.*, No. 02-12086 (PJW) (Bankr. D. Del. October 10, 2002) (same); *In re Worldcom, Inc.*, 02-13533 (AJG) (Bankr. S.D.N.Y. January 14, 2003) (order authorizing retention of Lazard Frères & Co. LLC under similar terms); *In re Metrocall, Inc.*, No. 02-11579 (RB) (Bankr. D. Del. July 8, 2002) (order authorizing retention of Lazard Frères & Co. LLC under similar terms); *In re Kaiser Aluminum Corporation,* No. 02-10429 (JKF) (Bankr. D. Del. March 19, 2002) (same); *In re Adelphia Communications Corporation*, 02-41729 (REG) (Bankr. S.D.N.Y. September 27, 2002) (same); *In re W.R. Grace & Co.*, No. 01-01139 (JJF) (Bankr. D. Del. June 22, 2001) (order authorizing retention of Blackstone Group under indemnification terms similar to the Indemnification Agreement).

37.     In light of the foregoing, and given the numerous issues that Lazard may be required to address in the performance of its services hereunder, Lazard's commitment to the variable level of time and effort necessary to address all such issues as they arise and the market prices for Lazard's services for engagements of this nature, the Debtors believe that the terms and conditions of the Engagement Letter and the Indemnification Agreement are fair, reasonable and market-based under the standards set forth in section 328(a) of the Bankruptcy Code.

## The Retention of Lazard Is Critical to the Debtors' Success

38.     Denial of the relief requested herein will deprive the Debtors the assistance of uniquely qualified investment banking and financial advisors and, certainly, would effect an unjust disadvantage to the Debtors and all parties of interest.  Indeed, the Debtors would be forced to engage new investment bankers and financial advisors who lack such a thorough understanding of the Debtors' business and the restructuring initiatives that have been implemented over the course of time and which will continue through the pendency of these chapter 11 cases, which would require the commitment of significant resources to get a substitute

up to speed given the steep learning curve involved and, further, comparable investment bankers and financial advisors would charge an equivalent level of fees.

## Notice

39.     No trustee, examiner or statutory creditors' committee has been appointed in these chapter 11 cases.  Notice of this Application has been provided to: (i) the United States Trustee for the Northern District of Texas; (ii) the Debtors' fifty (50) largest unsecured creditors (on a consolidated basis); (iii) counsel to the Debtors' prepetition secured lenders; and (iv) counsel to the Agent to the Debtors' proposed postpetition  lenders (collectively, the "Notice Parties").  The Debtors submit that no other or further notice need be provided.

## No Previous Request

40.     No previous request for the relief sought herein has been made to this or any other Court.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: December 1, 2008
          Fort Worth, Texas

PILGRIM'S PRIDE CORPORATION


 /s/ William Snyder_____
By: William Snyder
Title: Chief Restructuring Officer

# EXHIBIT A

## Declaration of Daniel M. Aronson

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

|   |   |   |
|---|---|---|
| | § | |
| | § | |
| In re | § | Chapter 11 |
| | § | |
| PILGRIM'S PRIDE CORPORATION, *et al.*, | § | Case No. 08-45664 (DML) |
| | § | |
| | § | |
| Debtors. | § | |
| | § | |
| | § | JOINT ADMINISTRATION REQUESTED |

**DECLARATION OF DANIEL M. ARONSON IN SUPPORT OF DEBTORS'
APPLICATION FOR AN ORDER PURSUANT TO SECTIONS 327(a) AND 328(a)
OF THE BANKRUPTCY CODE AND RULES 2014 AND 2016 OF THE FEDERAL
RULES OF BANKRUPTCY PROCEDURE AUTHORIZING THE EMPLOYMENT
AND RETENTION OF LAZARD FRERES & CO. LLC AS INVESTMENT BANKER
FOR THE DEBTORS *NUNC PRO TUNC* TO THE COMMENCEMENT DATE**

I, Daniel M. Aronson, pursuant to section 1746 of title 28 of the United

States Code, hereby declare that the following is true to the best of my knowledge:

1. I am a Managing Director of the firm Lazard Frères & Co. LLC ("Lazard"

or the "Firm"), which has its principal office at 30 Rockefeller Plaza, New York, New York

10020. I am authorized to execute this Declaration on behalf of Lazard. Unless otherwise stated

in this Declaration, I have personal knowledge of the facts set forth herein.

2. This Declaration is being submitted in connection with the proposed

retention of Lazard as investment banker to the Debtors to perform services as set forth in the

Debtors' application seeking to retain Lazard, filed contemporaneously herewith (the

"Application").[1]

---

[1] Capitalized terms used, but not defined, herein shall have the same meaning as in the Application.

3.      Lazard is the United States operating subsidiary of a preeminent international financial advisory and asset management firm.  Lazard, together with its predecessors and affiliates, has been advising clients around the world for over 150 years. Lazard has dedicated professionals who provide restructuring services to its clients.  Lazard is registered as a broker-dealer with the United States Securities and Exchange Commission.

4.      The current managing directors, directors, vice presidents and associates of Lazard have extensive experience working with financially troubled companies in complex financial restructurings out-of-court and in chapter 11 proceedings.  Lazard and its principals have been involved as advisors to debtors, creditors and equity constituencies and government agencies in many reorganization cases.  Since 1990, Lazard's professionals have been involved in over 250 restructurings, representing over $350 billion in debtor assets.

5.      In connection with its proposed retention by the Debtors in these cases, Lazard undertook to determine whether Lazard had any conflicts or other relationships that might cause it not to be disinterested or to hold or represent an interest materially adverse to the Debtors.  Specifically, Lazard obtained from the Debtors and/or their representatives the names of individuals and entities that may be parties-in-interest in these chapter 11 cases (the "Potential Parties-in-Interest") and such parties are listed on Schedule 1 annexed hereto.  Lazard has researched its electronic client files and records to determine its connections with the Debtors and any Potential Parties-in-Interest.  To the best of my knowledge, Lazard has not been retained to assist any entity or person other than the Debtors on matters relating to, or in connection with, these chapter 11 cases.

6.      To the best of my knowledge, insofar as I have been able to ascertain, none of the principals or employees of Lazard working on or connected to this engagement for the Debtors has had, or will have in the future, direct contact concerning these chapter 11 cases

with the Potential Parties-in-Interest, the United States Trustee, or anyone employed in the Office of the United States Trustee, other than in connection with this engagement for the Debtors.

7.      To the extent that I have been able to ascertain that Lazard has been retained to represent, since 2005, any Potential Party-in-Interest (or its apparent parent company or an apparent subsidiary or controlled affiliate of such parent company (any of such, a "Related Entity")) in matters unrelated to these cases, such Potential Party-in-Interest (or the apparent parent company thereof) is listed on Schedule 2 annexed hereto.  Lazard's representation of each entity listed on Schedule 2 (or its Related Entity) is or was only on matters that are unrelated to the Debtors or these cases.  Other than as listed on Schedule 2, I am unaware of any engagements of Lazard by the Potential Parties- in- Interest (or their Related Entities) since 2005.

8.      In addition to those entities listed on Schedule 2, Lazard may have also represented certain Potential Parties-in-Interest (or their Related Entities) prior to 2005 and Lazard may have worked with, continue to work with, and/or have mutual clients with, certain accounting and law firms who appear on the Potential Parties-in-Interest list.   Moreover, the Debtors have numerous customers, creditors and other parties with whom they maintain business relationships and some may not be included as Potential Parties-in-Interest.[2]

9.      Given the size of the Firm and the breadth of Lazard's client base, however, it is possible that Lazard may have been retained by one or more of the Potential Parties-in-Interest in unrelated matters without my knowledge.  To the extent that Lazard

---

[2] Additionally, as noted above, Lazard is the US operating subsidiary of an international financial advisory and asset management firm and thus has several legally separate and distinct affiliates. Although it is possible that employees of certain affiliates may assist Lazard in connection with Lazard's engagement, as Lazard is the only entity being retained by the Debtors, we have researched only the electronic client files and records of Lazard, not of all of its affiliates, to determine connections with any Potential Parties-in-Interest.

discovers any additional material relationships with the Potential Parties-in-Interest, it will use reasonable efforts to supplement this disclosure to the Court.

10. As part of its regular business operations, Lazard's asset management affiliate, Lazard Asset Management LLC ("LAM"), may act as investment advisor or trade securities for individuals and entities (including in discretionary client accounts, and through LAM's operation of hedge funds and mutual funds, in which cases investment decisions are made by LAM), including on behalf of creditors, equity holders or other parties in interest in these cases, and Lazard and its affiliates, managing directors and employees. Some of these LAM accounts and funds may now or in the future hold debt or equity securities of the Debtors. Lazard has in place compliance procedures to ensure that no confidential or non-public information concerning the Debtors has been or will be available to employees of LAM. While Lazard receives payments from LAM generated by LAM's business operations, LAM is operated as a separate and distinct affiliate of Lazard, which is separated from the Firm's other businesses, including its financial advisory services group and its managing directors and employees advising the Debtors, by an ethical wall.[3]

11. Other than as disclosed herein, Lazard has no relationship with the Debtors of which I am aware after due inquiry.

---

[3] Effective May 10, 2005, Lazard transferred its alternative investments business (which includes fund management and investment) and capital markets business (which includes equity research, syndicate, sales and trading) to new privately-held companies, Lazard Alternative Investments LLC ("LAI") and Lazard Capital Markets LLC ("LCM"), respectively, which are neither owned nor controlled by Lazard. LAI and LCM are owned and operated by LFCM Holdings LLC ("LFCM"), which is owned in large part by Lazard managing directors. LFCM is separate from Lazard and its businesses, including its financial advisory services group and its managing directors and employees advising the Debtors. LFCM does not hold any proprietary interest in any of the Debtors' debt or equity securities. Potential Parties-in-Interest may be customers of LFCM or investors in funds managed by subsidiaries of LFCM and LCM may have acted as an underwriter in connection with offerings by Potential Parties-in-Interest, or their Related Entities; to the extent LCM so acted as an underwriter since 2005, the relevant Potential Party-in-Interest (or the apparent parent company thereof) is listed on Schedule 2.

12.     Lazard has provided and agrees to continue to provide assistance to the Debtors in accordance with the terms and conditions set forth in the Application, the Engagement Letter and the Indemnification Agreement, which are annexed to the Application as Exhibits B and C.  Accordingly, I make this Declaration in support of an order authorizing such retention.

13.     It is the intention of Lazard to seek compensation for its services as described in the Application and the Engagement Letter in accordance with the Bankruptcy Code, the Bankruptcy Rules, the United States Trustee Guidelines and any and all rules of this Court.

14.     Lazard charges its clients for reasonable expenses associated with an assignment.  Except as necessary to comply with an applicable administrative order, all such expense billings are in accordance with the Firm's customary practices.

15.     The compensation arrangement provided for in the Engagement Letter and the provisions of the Indemnification Agreement are generally consistent with and typical of arrangements entered into by Lazard and other investment banking firms in connection with rendering similar services to clients such as the Debtors.

16.     Based upon the foregoing, I believe Lazard is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code and does not hold or represent an interest materially adverse to the Debtors or their estates.

Dated: December 1, 2008

LAZARD FRERES & CO. LLC

By:  Daniel M. Aronson
        Name:  Daniel M. Aronson
        Title:  Managing Director

5