## Exhibit A

**The Term Sheet**

# TERM SHEET
# (FOR DISCUSSION PURPOSES ONLY)

## SURETY CREDIT FACILITY
## PILGRIM'S PRIDE CORPORATION
## Dated as of May, 2009

Liberty Mutual Insurance Company, its affiliates and co-sureties, if any ("Liberty" or "Surety"), agree to make available to Pilgrim's Pride Corporation and its debtor affiliates (collectively, the "Debtors" or "Principals"), as debtors and debtors in possession in the voluntary chapter 11 cases pending in the United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court"), Case No. 08-45664 (MDL) (the "Bankruptcy Cases"), surety credit (the "Surety Credit") upon the terms and conditions set forth in this Term Sheet.

### I.     Surety Credit Facility

Liberty Agrees to provide the Debtors with up to the aggregate sum of Eighteen Million Dollars ($18,000,000) in Surety Credit, with the issuance of such bonds under the Surety Credit Facility (hereinafter sometimes the "Facility") being on the terms and conditions outlined in the documents comprising **Exhibit 1** hereto.

Collateral. Liberty currently holds Letter of Credit Number S202563 issued by Merrill Lynch Bank USA in the face amount of Six Million ($6,000,000) Dollars (the "Existing Letter of Credit"), of which $3,818,407.26 remains as available collateral ("Existing Collateral") following Liberty's draws on the Existing Letter of Credit in the aggregate amount of $2,181,592.74 to pay the claims in the amounts and under the bonds set forth on Exhibit C-1 in the documents comprising **Exhibit 1** (the "Paid Bond Claims"). The Debtors will arrange for an increase of $6,181,592.74 to the Existing Collateral, which increase will take the form of either an increase in the Existing Letter of Credit, the issuance of a new clean irrevocable letter of credit or new clean irrevocable letters of credit, or pledge of cash (the Existing Collateral along with such other letters of credit or cash collectively the "Collateral"). In the event that the Debtors elect to pledge cash as part of the required collateral increase, Debtors shall execute and deliver to Liberty a Pledge Agreement, in a form acceptable to Liberty in its sole and absolute discretion.

The Collateral shall be held by Liberty on a "spread of risk" basis securing the payment of all Surety Loss (hereinafter defined) until such time as all obligations bonded by Liberty have been fully paid or performed and all bonds issued by Liberty for the benefit of the Debtors have been released, replaced, discharged or terminated without Surety Loss. At all times, the amount of collateral supporting the Facility shall not be less than Ten Million Dollars ($10,000,000) (the "Collateral Threshold"). In the event that Liberty draws on any of the Collateral, and upon written request of Liberty, the Debtors shall within five (5) business days arrange for the replenishment of the Collateral (in form of cash or letter of credit, as discussed above) to the extent necessary to meet the Collateral Threshold. Failure to so maintain the Collateral Threshold shall constitute an Event of Default under the Surety Credit Documents.

### II.     Surety Credit Documents

The Debtors will be required to execute and deliver Surety Credit Documents in favor of Liberty, which in substance shall be reasonably satisfactory to Liberty in its sole and absolute discretion. This documentation will include, but not be limited to, the following:

1. The General Agreement of Indemnity dated December 24, 2002 (the "Indemnity Agreement") and the Addendum to General Agreement of Indemnity (the "Addendum"), in the form attached as **Exhibit 1**.

2. Such other and further documents as Surety may require in its sole and absolute discretion, including, but not limited to a Pledge Agreement in form satisfactory to Surety in its sole and absolute discretion in the event Debtors elect to pledge cash in lieu of delivering a additional letter of credit, or letter of credit increase, to Surety. .

### III.    Requisite Deliveries for Closing

As conditions to Closing, the Debtors shall deliver to Liberty the following (which for purposes of this Term Sheet shall be the "Requisite Deliveries"):

1. An order of the Bankruptcy Court (the "Approval Order") approving the assumption by the Debtors of all pre-petition bonded obligations and indemnity obligations to Surety, including, without limitation, the obligations of Indemnitors under the Indemnity Agreement (collectively, the "Obligations").

2. Surety Credit Documents of the form described herein duly authorized and executed; and

3. A clean irrevocable letter of credit in the form described herein or a Pledge Agreement (in form satisfactory to Surety in its sole and absolute discretion) in the event Debtors elect to pledge cash in lieu of delivering a additional letter of credit, or letter of credit increase, to Surety.

### IV.    Miscellaneous

1. Court Approval. Liberty's entry into this Term Sheet is expressly conditioned upon the Debtors obtaining the permission of the Bankruptcy Court to do so. Accordingly, the Debtors will file a Motion seeking entry of an Approval Order and permitting: (a) execution of such documents as may be reasonably required by Liberty; and (b) the delivery of the Requisite Deliveries to Liberty, which Motion shall be heard as soon as the Court's schedule and the applicable case management order allows.

2. Closing Date. Closing of the transactions contemplated by this Term Sheet shall occur upon the later to occur of (i) the date of entry of the Approval Order and (ii) the date the Debtors has delivered the Requisite Deliveries to Liberty (the "Closing").

3. Reservation of Rights. Nothing herein shall be deemed an estoppel, waiver or modification of any party's rights or defenses and the parties hereby reserve all of their rights under the bond(s), the Indemnity Agreement, at law or in equity.

475201

IN WITNESS WHEREOF, this Term Sheet is executed by the parties on the day and date first set forth above.

SURETY:

LIBERTY MUTUAL INSURANCE COMPANY

By: _____

Its: _____


PRINCIPAL/INDEMNITORS:

PIGRIM'S PRIDE CORPORATION

By: _____

Its: _____


**THIS TERM SHEET IS FOR DISCUSSION PURPOSES ONLY, AND NOTHING CONTAINED HEREIN SHALL BE CONSTRUED AS AN OFFER TO PROVIDE SURETY CREDIT OR ASSISTANCE IN ANY FORM.**

475201

# EXHIBIT 1

## General Agreement of Indemnity dated December 24, 2002

## Addendum to General Agreement of Indemnity

## ADDENDUM TO GENERAL AGREEMENT OF INDEMNITY

THIS ADDENDUM TO GENERAL AGREEMENT OF INDEMNITY (this Addendum"), dated as of the _____ day of June 2009 between PILGRIM'S PRIDE CORPORATION, a Delaware corporation, and certain of its Subsidiaries and Affiliates and their respective bankruptcy estates identified on **Exhibit A** (individually and collectively "Principal"); PILGRIM'S PRIDE CORPORATION, a Delaware corporation, and certain of its Subsidiaries and Affiliates and their respective bankruptcy estates identified on **Exhibit B**, in their capacity as Indemnitors (individually and collectively "Indemnitors"); and LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts company, its Affiliates and Subsidiaries and their respective co-sureties and reinsurors, and their respective successors and permitted assigns (individually and collectively "Surety"). All capitalized terms will have the meanings set out in Section 1.

WITNESSETH:

WHEREAS, Principal is engaged in business, among other things, as a chicken producer throughout the United States, Puerto Rico and Mexico, and Principal, individually, jointly with others or on behalf of individuals, partnerships, or corporations, may desire or be required from time to time in connection with their respective businesses to give certain bonds;

WHEREAS, Pilgrim's Pride Corporation, on its behalf and on behalf of any of its majority owned subsidiaries or any affiliates, whether present or future, and whether directly or indirectly held, heretofore executed an Indemnity Agreement in favor of Surety;

WHEREAS, Indemnitors and certain of their Affiliates and Subsidiaries (collectively, the "Debtors") commenced Chapter 11 cases currently pending in the United States Bankruptcy Court, Northern District of Texas, styled In Re: Pilgrim's Pride Corporation., et al., Case No. 08-45664;

WHEREAS, Indemnitors recognize that Bonds are a necessary and desirable adjunct to the business done and to be done by Principals and Indemnitors, and in furtherance thereof, have requested that Surety consider providing Surety Credit to Principal and Indemnitors during the Bankruptcy Case; and

WHEREAS, the Bankruptcy Court authorized Indemnitors to enter into this Agreement by entry of the Approval Order;

WHEREAS, upon the express condition that this Agreement be executed, Surety has executed or procured, or will execute or procure, the execution of certain Bonds, and Surety may continue or replace previously executed Bonds and may forbear cancellation of such Bonds;

WHEREAS, Indemnitors recognize that Bonds are a necessary and desirable adjunct to the business done and to be done by Principal and each desires to accommodate the financial, security, indemnity, exoneration, and other requirements of Surety as an inducement to Surety to

become surety upon obligations of Principal, and has therefore agreed to be bound by this Agreement and has agreed to exercise its best efforts to permit and require Principal to honor and perform all of the terms of this Agreement; and

WHEREAS, Surety has agreed to act as surety or procure surety bonds for Principal, subject to the understanding of the parties that, except as specifically provided in the first paragraph of Section 4, Surety is under no obligation to act as surety for any bond of Principal and that Principal is under no obligation to obtain bonds from Surety.

NOW, THEREFORE, in consideration of the mutual agreements set forth herein, the execution or procurement of any Bond by Surety or the forbearance of cancellation of any Existing Bonds by Surety, and as an inducement to such execution, procurement, or forbearance, we, the undersigned Principal and Indemnitors, agree and bind ourselves, our bankruptcy estate, if any, our successors and assigns, jointly and severally, as follows:

1.    <u>Definitions</u>.  For the purposes of this Agreement, the following terms will have the meanings listed below:

"Affiliate" means, with respect to any Person, whether or not in bankruptcy, any other Person or group acting in concert with respect of the Person that, directly or indirectly, through one or more intermediaries, controls, or is controlled by, or is under the common control with such Person. For purposes of this definition, "control" (including, with correlative meanings, the terms "controlled by" and "under common control with"), as used with respect to any Person or group of Persons, will mean the possession, directly or indirectly, of the power to direct or cause the direction of management and policies of such Person, whether through the ownership of voting securities or by contract or otherwise. Each Principal and Indemnitor is an Affiliate of each other. Surety is not an Affiliate of any Principal or Indemnitor.

"Agreement" or "this Agreement" means the Indemnity Agreement as amended by this Addendum (with all Exhibits), and as hereafter amended, modified, or supplemented.

"Approval Order" means that certain order authorizing Debtors to enter into Surety Credit Facility (sometimes, the "Facility") with Liberty Mutual Insurance Company dated _____, entered by the Bankruptcy Court in the Bankruptcy Case.

"Bankruptcy Case" means the bankruptcy cases commenced by Indemnitors, currently pending in the Bankruptcy Court pursuant to the Bankruptcy Code.

"Bankruptcy Code" means Title 11 of the United States Code entitled "Bankruptcy," as now and hereafter in effect, or any successor statute.

"Bankruptcy Court" means the United States Bankruptcy Court Northern District of Texas, or such other court to which the Bankruptcy Case may be transferred.

"Bonds" means commercial bonds, appeal bonds, worker's compensation bonds, utility deposit bonds, lottery agent bonds, agriculture dealer bonds, license bonds, fuel tax bonds,

475199                                              2

warehouse bonds, highway use bonds, certified scale repairman's bonds, property brokers bonds, donated food processing program bonds, and similar bonds, surety agreements, undertakings, and similar instruments of guarantee signed or procured by Surety on behalf of any Principal, executed before or after the date of this Agreement, including, but not limited to, the Existing Bonds, and any extensions, modifications, or renewals thereof, if any.

"Business Day" means any day excluding Saturday, Sunday, and any day which is a legal Federal holiday or holiday under the laws of the State of Texas or is a day on which banking institutions located in such state are authorized or required by law or other governmental action to close.

"Collateral" means the the Letter of Credit and such other collateral or other security (whether in the form of cash, letter-of-credit, or other instrument or form satisfactory to Surety in its sole and absolute discretion) supporting the Facility, the aggregate value of which shall not be less than Ten Million Dollars ($10,000,000).

"Closing" means the date on which all of the conditions precedent set forth in Section 2 hereof have been satisfied.

"Effective Date" means the Business Day on which all conditions to the consummation of the confirmed plan of reorganization for Indemnitors have been satisfied or waived.

"Event of Default" means any one or more of the following that occurs after the execution of this Addendum:

    (a)    Principal, Indemnitors, or any of them have failed to perform any obligation under the Agreement, as reasonably determined by Surety; or

    (b)    any Obligee has declared Principal in default under any Bond and Principal has failed to cure such default within any cure period provided under contact, statute, or other applicable law.  It will be no defense to the enforcement of this Agreement by Surety that Principal asserts that it is not in defaultor

    (c)    Principal has acknowledged in writing its default under any Bond; or

    (d)    Surety incurs a Surety Loss;

    (e)    any financial statement, representation or warranty, made or furnished by Indemnitors to Surety in connection with this Addendum or the Surety Credit Documents, or as an inducement to Surety to enter into this Addendum, or in any separate statement or document to be delivered hereunder to Surety was or proves to be false, incorrect, or incomplete in any material respect when made; or

    (f)    any judgment or order for the payment of money (exclusive of any judgment or order rendered prior to the Petition Date and exclusive of any amounts fully covered by insurance (less any applicable deductible) and as to which the insurer has acknowledged its

475199                         3

responsibility to cover such judgment or order) will be rendered against any Indemnitor and such judgment will not have been vacated or discharged or stayed or bonded pending appeal within thirty (30) days after the entry thereof or enforcement proceedings will have been commenced by any creditor upon such judgment or order; or

       (g)    the determination of Indemnitors, whether by vote of their board of directors or otherwise, to suspend the operation of Indemnitors' business in the ordinary course, liquidate all or substantially all of Indemnitors' assets; or

       (h)    Indemnitors endeavor to reduce or otherwise impair the face amount of the Letter of Credit without the consent of Surety; or

       (i)    the commencement after the Effective Date of proceedings in bankruptcy, or for reorganization of any Principal or Indemnitors, or for the readjustment of the debt of any Principal or Indemnitors, in each case under the Bankruptcy Code, or any part thereof, or under any other laws, whether state or federal, for the relief of debtors, now or hereafter existing, by or against any Principal or Indemnitors and any such proceedings commenced against any Principal or Indemnitors are not dismissed, discharged, or stayed within ninety (90) days of filing; or

       (j)    the appointment of a receiver or trustee for Indemnitors, or for any substantial part of their assets, or the institution by a Person other than Indemnitors, or any Person acting on their behalf of any proceedings for the dissolution or the full or partial liquidation of Indemnitors, and such proceedings are not dismissed, discharged, or stayed within ninety (90) days of filing; or

       (k)    the appointment of a receiver or trustee for any Principal, or for any substantial part of its assets, or the institution by a Person other than any Principal or any Person acting on its behalf of any proceedings for the dissolution or the full or partial liquidation of any Principal and such proceedings are not dismissed, discharged, or stayed within ninety (90) days of filing, or any of Principal will discontinue its business or materially change the nature of its business; provided, however, that if any Principal merged with, or transferred all or substantially all of its assets to, an Indemnitor, such merger or transfer will not be an Event of Default under this item; or

Notwithstanding anything in any of the Surety Credit Documents to the contrary, no Event of Default will be deemed to have occurred solely as a result of the filing of the Bankruptcy Case.

"Existing Bonds" means the Bonds described on the attached **Exhibit C**.

"Existing Letter of Credit" means that certain Letter of Credit No. S202563 issued by Merrill Lynch Bank USA in favor of Surety in the face amount of Six Million and 00/100 Dollars ($6,000,000.00), of which $3,818,407.26 remains available as Collateral following Liberty's draws on the Existing Letter of Credit in the aggregate amount of $2,181,592.74 to pay claims in the amounts and under the Bonds set forth on **Exhibit C-1** (the "Paid Bond Claims") at the direction of and with the consent of the Indemnitors.

475199                     4

"Indemnitors" means Pilgrim's Pride Corporation and its Affiliates and Subsidiaries listed on **Exhibit B**. In addition, any Subsidiaries and Affiliates of Indemnitors named as Principal on any Bond, and their successors and assigns, will be deemed to be an Indemnitor under this Agreement. Thereafter, said Subsidiaries and Affiliates, their successors and assigns, will be deemed to be an Indemnitor hereunder as though they were original signatories hereto.

"Indemnity Agreement" means that certain General Agreement of Indemnity Commercial Surety dated December 24, 2002, executed by Pilgrim's Pride Corporation, on its behalf and on behalf of any of its majority owned subsidiaries or any affiliates, whether present or future, and whether directly or indirectly held, in favor of Surety.

"Letter of Credit" means the Existing Letter of Credit, and any amendments and modifications thereto and any substitute or replacement thereof, and any other letters of credit, and any amendments and modifications thereto and any substitutes or replacements thereof.

"Obligee" means any named party or parties appearing on any Bond(s) in whose favor the Bond(s) are issued, or such parties' successors and permitted assigns.

"Person" means any entity, whether an individual, trustee, corporation, partnership, joint stock company, unincorporated organization, business association or firm, joint venture, a government or any agent or instrumentality or political subdivision thereof.

"Petition Date" means December 1, 2008 (the date on which Indemnitors filed for bankruptcy protection pursuant to the Bankruptcy Code).

"Principal" means Indemnitors in their capacity as a named principal under any Bond. Any Subsidiaries and Affiliates of Indemnitors named as Principal on any Bond and their successors and assigns will be deemed to be a Principal under this Agreement. Thereafter, said respective Subsidiaries and Affiliates, their successors and assigns, will be deemed to be a Principal hereunder as though they were original signatories hereto.

"Reserve" means a sum of money set aside by Surety to pay present and future liabilities for Surety Loss under any Bonds. Such Reserve is established pursuant to Title XXII, Chapter 175 of the Massachusetts General Laws Annotated, and/or pursuant to similar laws, statutes, codes, and/or regulations of any other state or jurisdiction applicable to Surety.

"Subsidiaries" means any corporations, partnerships, or other entities wherein any Principal owns or acquires, directly or indirectly, more than fifty percent (50%) of the issued and outstanding voting stock, securities, or other equity interest of such corporation, partnership, or other entity, or any other corporation, partnership or other entity the management of which is otherwise controlled, directly or indirectly, through one or more intermediaries, or both, by any Principal.

"Surety" means Liberty Mutual Insurance Company, a Massachusetts corporation, its Affiliates and Subsidiaries and any other companies writing Bonds for which this Agreement is

475199                                   5