## Exhibit B

**The Prepetition Agreement**

**LIBERTY BOND SERVICES**

## GENERAL AGREEMENT OF INDEMNITY
### COMMERCIAL SURETY

WHEREAS, the undersigned (hereinafter called "INDEMNITOR"), desires one or more of Liberty Mutual Insurance Company, a Massachusetts corporation; LM Insurance Corporation, an Iowa corporation; The First Liberty Insurance Corporation, an Iowa corporation; Liberty Mutual Fire Insurance Company, a Massachusetts corporation; Liberty Insurance Corporation, a Vermont corporation; and any other company that is part of or added to the Liberty Mutual Group for which surety business is underwritten by Liberty Bond Services (collectively hereinafter called "SURETY") to execute bonds, undertakings, recognizances, instruments of guarantee and other like obligations, including those which predate this Agreement (hereinafter called "BONDS") on its behalf; and on behalf of any majority-owned or controlled subsidiaries or any affiliates, whether present or future, and whether directly or indirectly held; and, upon the written request of the undersigned, any other corporation, partnership or person; and as to all of the foregoing, whether they act alone or in joint venture with others (collectively hereinafter called "PRINCIPAL"), or to renew or to refrain from canceling the BONDS;

NOW, THEREFORE, in consideration of the SURETY executing the BONDS, or renewing or refraining from canceling the BONDS, the INDEMNITOR hereby agrees that:

1. BENEFICIAL INTEREST - The undersigned warrant that each of them is specifically and beneficially interested in the obtaining of each of the BONDS.

2. PREMIUMS - The INDEMNITOR shall pay to the SURETY all premiums and charges due for any BONDS in accordance with its rate filings, its manual of rates, or as otherwise established by the SURETY, until the PRINCIPAL or INDEMNITOR shall serve evidence satisfactory to the SURETY of its discharge or release from all liability under any BONDS.

3. INDEMNITY - The INDEMNITOR shall exonerate, indemnify and save harmless the SURETY from and against any and all loss, damage or expense (including, but not limited to, interest, costs and attorney's fees) which the SURETY shall at any time sustain or incur by reason of: the request to execute, procure, or deliver any BONDS; or the executing, procuring or delivering of any BONDS, whether already or hereafter executed; or the renewal or continuation thereof; or from making any investigation on account thereof; or any payment thereunder; or as a result of prosecuting or defending any action brought in connection therewith, obtaining a release therefrom, or recovering or attempting to recover any salvage in connection therewith; or by reason of the failure of the INDEMNITOR to perform or comply with the terms of this Agreement; or in the enforcement of the terms of this Agreement. An itemized statement of loss and expense incurred by the SURETY, sworn to by an officer of the SURETY, shall be prima facie evidence of the fact and extent of the liability of the undersigned to the SURETY in any claim or suit by the SURETY against the undersigned.

4. CLAIMS AND SETTLEMENTS - The SURETY shall have the exclusive right for itself and the undersigned to determine in good faith whether any claim or suit upon any BONDS shall, on the basis of liability, expediency or otherwise, be paid, compromised, defended or appealed. SURETY may incur such expenses, including reasonable attorney's fees, as SURETY deems necessary or advisable in the investigation, defense and payment of such claims. It is the SURETY's exclusive right at its option and sole discretion to adjust, settle or compromise any claim, demand, suit or judgment upon the BONDS, unless the PRINCIPAL and the INDEMNITOR shall request the SURETY to litigate such claim or demand, or to defend such suit, or to appeal from such judgment, and shall deposit with the SURETY, at the time of such request, cash or collateral satisfactory to the SURETY in kind and amount to be used in paying any award(s) or judgment(s) rendered or that may be rendered. The SURETY shall have every right, defense or remedy which a personal surety without compensation would have, including the right of exoneration and the right of subrogation, and nothing contained herein shall be construed to waive or diminish any right, defense or remedy which the SURETY might have if this instrument were not executed.

5. DISCHARGE/PLACE IN FUNDS - The INDEMNITOR will, within thirty (30) days after the SURETY's written demand, either: a) procure the discharge of the SURETY from any BONDS and all liability by reason thereof; or b) if unable to secure such discharge, the INDEMNITOR will place the SURETY in funds that are immediately available and sufficient to meet all of SURETY's liabilities or potential liabilities (including attorney's fees, costs and expenses) arising from any BONDS or request therefor (as may or may not be evidenced by the establishment of a reserve), as determined by the SURETY in its sole discretion, whether or not any payments have been made by the SURETY. The SURETY shall send its written demand to the INDEMNITOR's last known address by registered or certified mail. Alternatively, at the SURETY's sole discretion and election, INDEMNITOR and SURETY may make other provisions satisfactory to the SURETY for the funding of any bonded obligation(s). The INDEMNITOR hereby acknowledges that if the INDEMNITOR breaches its obligations set forth in this paragraph, the SURETY will have no adequate remedy at law and shall be entitled to injunctive relief, including without limitation specific performance of the terms of this Agreement.

6. TRUST FUND, ASSIGNMENT AND OTHER REMEDIES - The PRINCIPAL and INDEMNITOR hereby agree that all of their interest, title and rights in the contract or undertaking referred to in the BONDS, or in, or growing in any manner out of the BONDS shall be held as a trust fund in which the SURETY has an interest, and shall inure to the benefit of the SURETY for any liability or loss it may have or sustain under any of the BONDS, and this Agreement constitutes notice of such trust. The PRINCIPAL and the INDEMNITOR hereby do and will assign, pledge and convey to the SURETY, as collateral security for the full performance of their obligations under this Agreement and for the payment of any other indebtedness or liability of the PRINCIPAL and INDEMNITOR to the SURETY, whether heretofore or hereafter incurred, the PRINCIPAL and/or INDEMNITOR's interest, title and rights in, and growing in any matter out of, all contracts referred to in the BONDS, or in, or growing in any manner out of the BONDS, but only in the event of: 1) any abandonment, forfeiture or breach of any contract referred to in the BONDS or any breach of any BONDS; or 2) a default in discharging any other indebtedness or liability incurred in connection therewith, when due; or 3) any breach of this Agreement; or 4) any assignment by the PRINCIPAL for the benefit of creditors, or upon PRINCIPAL's involvement in any agreement or proceeding of liquidation, receivership, or bankruptcy, whether insolvent or not. Upon the happening of any of the events described in 1) through 4) herein, the SURETY shall have the right, with or without exercising any other right conferred upon it by law or under the terms of this Agreement, to take possession of any part or all of the work under any contract(s) covered by any BOND, and at the expense of the PRINCIPALS and INDEMNITORS to complete or arrange for the completion of the same, and the PRINCIPALS and INDEMNITORS shall promptly, upon demand, pay to the SURETY all losses, fees, costs and expenses so incurred. The PRINCIPALS and INDEMNITORS hereby irrevocably constitute and appoint the SURETY as their attorney-in-fact with the full right and authority, but not the obligation, to exercise all rights of the PRINCIPALS and INDEMNITORS assigned and set over to the SURETY in this Agreement, including the authority to execute on behalf of the PRINCIPALS and INDEMNITORS any documents or agreements deemed necessary and proper by the SURETY in order to give full effect not only to the intent and meaning of the within assignments, but also to the full protection intended to be given to the SURETY under all other provisions of this Agreement. The PRINCIPALS and INDEMNITORS hereby ratify all actions taken and done by the SURETY as attorney-in-fact.

7. BOOKS AND RECORDS - Until the SURETY shall have been furnished with competent evidence of its discharge, without loss, from any and all BONDS, the SURETY shall have the right to free access to the books, records and accounts of each of the undersigned for the purpose of examining them. Each of the undersigned hereby authorizes and requests any depositories in which funds of any of the undersigned may be deposited to furnish to the SURETY the amount of such deposits as of any date requested; and, any person, firm or corporation doing business with the undersigned is hereby authorized to furnish any information requested by the SURETY concerning any transaction. The SURETY may furnish copies of any information which it now has or may hereafter obtain concerning each of the undersigned to other persons or companies for the purpose of procuring co-suretyship or reinsurance or complying with regulatory requirements or advising interested persons or companies.

8. OTHER INDEMNITY - The INDEMNITOR shall continue to remain bound under the terms of this Agreement even though the SURETY may have heretofore or hereafter, with or without notice to or knowledge of the PRINCIPAL and/or the INDEMNITOR, accepted or released other agreements of indemnity or collateral in connection with the execution or procurement of said BONDS, from the PRINCIPAL or INDEMNITOR or others. The rights, powers and remedies given the SURETY under this Agreement shall be and are in addition to, and not in lieu of, any and all other rights, powers, and remedies which the SURETY may have or acquire against the PRINCIPAL and INDEMNITOR or others, whether by the terms of any agreement or by operation of law or otherwise.

9. **UNIFORM COMMERCIAL CODE** - This Agreement shall constitute a Security Agreement to the SURETY and also a Financing Statement in accordance with the provisions of the Uniform Commercial Code of every jurisdiction wherein such Code is in effect and may be so used by the SURETY without in any way abrogating, restricting or limiting the rights of the SURETY under this Agreement or under law, or in equity. A carbon, photographic or other reproduction of this Agreement may be filed as a Financing Statement.

10. **SURETIES** - In the event the SURETY procures the execution of the BONDS by other sureties, or executes the BONDS with co-sureties, or reinsures any portion of the BONDS with reinsuring sureties, then all the terms and conditions of this Agreement shall inure to the benefit of any such other sureties, co-sureties and reinsurers, as their interests may appear.

11. **DECLINE EXECUTION** - The SURETY may decline to execute, renew or extend any BONDS, including final bonds, and may cancel any BONDS unless the BONDS state otherwise, and the PRINCIPAL and INDEMNITOR shall make no claim to the contrary. The PRINCIPAL and INDEMNITOR shall make no claim relating to the failure or refusal of any person or entity to accept any of the SURETY's BONDS or to award any contract to any PRINCIPAL.

12. **CHANGES, WAIVER OF NOTICE** - The SURETY is authorized and empowered, without notice to or knowledge of the INDEMNITOR or PRINCIPAL, to assent to changes in any BONDS, and/or in the contracts or obligations covered by any BONDS, or to refuse so to assent, it being expressly understood and agreed that the INDEMNITOR shall remain bound under the terms of this Agreement, even though any such assent by the SURETY does or might substantially increase the liability of the INDEMNITOR. The SURETY waives notice of: the execution of the BONDS; acceptance of this Agreement; any default; and/or any other acts which may give rise to a bond claim or liability of the SURETY under the BONDS.

13. **INVALIDITY** - Invalidity of any provision of this Agreement by reason of the laws of any jurisdiction shall not render the other provisions hereof invalid. In case the execution of this Agreement by the INDEMNITOR is defective or invalid for any reason, such defect or invalidity shall not affect the validity or enforceability of this Agreement or the liability hereunder of the INDEMNITOR executing the same.

14. **ENFORCEMENT** - Separate suits may be brought under this Agreement as causes of action accrue, and the pendency or termination of any such suit shall not bar any subsequent action by SURETY. The undersigned authorize SURETY to join any and all of the undersigned as parties defendant in any action, regardless of venue or forum, against SURETY on account of any BONDS, and to enforce the obligations hereunder directly against any of the undersigned without the necessity of first proceeding against the PRINCIPAL. All funds which shall become due from the INDEMNITOR to the SURETY under any of the terms of this Agreement shall bear prejudgment interest at the legal rate.

15. **GOVERNING LAW** - This Agreement shall be governed by and construed in accordance with the laws of the State of New York (without giving effect to the conflict of laws principles thereof), except to the extent superseded by federal law.

16. **TERMINATION** - This Agreement may be terminated by the INDEMNITOR upon 30 days' written notice sent by registered or certified mail to SURETY at its home office at Liberty Bond Services, 450 Plymouth Road, Suite 400, Plymouth Meeting, PA 19462-1644, but any such notice of termination shall not operate to modify, bar, or discharge the INDEMNITOR as to the BONDS that may have been theretofore executed or approved, or renewed or extended. Such termination by any undersigned shall in no way affect the obligation of any other undersigned who has not given notice of termination as herein provided.

17. **JOINT/SEVERAL** - The INDEMNITOR and its successors and assigns are jointly and severally bound by this Agreement.

Executed this  24th  day of  December , in the year 2002.

Pilgrim's Pride Corporation  Fein # 75-1285071
110 South Texas
Pittsburg, Texas 75686
(PRINCIPAL/INDEMNITOR name and address)

By: _____(signature)_____
Vice President - Risk Management
(name and title)

(CORPORATE SEAL)

Attest: Nona Branch (signature)
Nona Branch Exec. Asst. to CFO
(name and title)

**CORPORATE ACKNOWLEDGMENT**

STATE of  Texas
County of  Camp   ss.
On this  24th  day of  December , 2002, before me personally appeared  Mark Lawrence
and  N/A  known by me to be the  VP - Risk Mgmt
and  N/A  of the corporation described in and which executed the foregoing Agreement; that they know the seal of the said corporation; that the seal affixed to the said Agreement is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that they signed their names thereto by like order.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

Nona R. Branch
(Signature of Notary Public)
Notary Public, residing at  Camp County, Texas
My commission expires  4/30/03

[SEAL: NONA R BRANCH NOTARY PUBLIC STATE OF TEXAS APRIL 30, 2003]

# RESOLUTION

## OF THE BOARD OF DIRECTORS OF

## PILGRIM'S PRIDE CORPORATION

**RESOLVED**, that the Mark A. Lawerence, Pilgrim's Pride Corporation's Risk Manager, is hereby authorized to execute the attached General Agreement of Indemnity issued by Liberty Mutual Insurance Company and the Writ of Supersedeas Bond in connection with bonding requirements necessary for the appeal of the verdict in William A. Smoak vs. Pilgrim's Pride Corporation.

This Resolution is effective as of the date of this Board Meeting, November 13, 2002.

_____          11/13/02
Richard A. Cogdill                                    Date
Secretary