U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS
ON THE COURTS DOCKET
TAWANA C. MARSHALL, CLERK

DEC 1 0 2009

D. Michael Lynn
U.S. Bankruptcy Judge

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

|  |  |  |
|---|---|---|
| In re | § § § | Chapter 11 |
| PILGRIM'S PRIDE CORPORATION, *et al.*, | § § | Case No. 08-45664 (DML) |
| Debtors. | § § § | |
|  | § | JOINTLY ADMINISTERED |

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER
## CONFIRMING DEBTORS' AMENDED JOINT PLAN OF REORGANIZATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE (AS MODIFIED)
(Relates to Docket Nos. 3375, 3828, 4033, and 4035)

The Debtors' Amended Joint Plan of Reorganization Under Chapter 11 of the

Bankruptcy Code (As Modified) (as may be further modified, the "Plan") having been filed with

the Bankruptcy Court[1] by Pilgrim's Pride Corporation ("PPC") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (collectively, the "Debtors"),[2] on November 17, 2009 [Docket No. 4035]; and the supplement to the Plan and an amendment thereto (as the documents contained therein may be further amended or supplemented, the "Plan Supplement") having been filed with the Bankruptcy Court by the Debtors on November 20, 2009 and December 4, 2009, respectively; and the Bankruptcy Court having entered, after due notice and a hearing, an order [Docket No. 3828] (the "Disclosure Statement Order"), dated October 22, 2009, (i) approving the proposed disclosure statement (the "Disclosure Statement"); (ii) approving the procedures to solicit acceptances of the Debtors' proposed Plan, and (iii) scheduling a hearing and establishing notice and objection procedures for confirmation of the Debtors' proposed Plan (the "Confirmation Hearing"); and the Disclosure Statement and Plan having been distributed or made available to holders of Claims against and Equity Interests in the Debtors and other parties in interest as provided in the Disclosure Statement Order; and the Bankruptcy Court having entered, after due notice and a hearing, an order [Docket No. 4033] (the "Election Procedures Order"), dated November 17, 2009, approving certain election procedures (the "Election Procedures") with respect to confirmation of the Plan; and the hearing to consider confirmation of the Plan having been held before the Bankruptcy Court on December 8, 2009 (the "Confirmation Hearing"); and due notice of the Plan, the Confirmation Hearing and the Election Procedures having been provided to holders of Claims against and Equity Interests in the Debtors and other parties in interest in accordance

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to such terms in the Plan.

[2] The Debtors in these cases are PPC; PFS Distribution Company, PPC Transportation Company; To-Ricos, Ltd.; To-Ricos Distribution, Ltd.; Pilgrim's Pride Corporation of West Virginia, Inc.; and PPC Marketing, Ltd.

with the Disclosure Statement Order, the Election Procedures Order, title 11 of the United States

Code (the "Bankruptcy Code"), and the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), as established by the affidavits of service, mailing, and/or publication filed

with the Bankruptcy Court (the "Notice Affidavits"),[3] and such notice being sufficient under the

circumstances and no further notice being required; and after full consideration of (i) the

Debtors' memorandum of law in support of confirmation of the Plan, dated December 4, 2009

[Docket No. 4318] (the "Confirmation Memorandum of Law"), (ii) the declarations in support of

confirmation of the Plan, each filed December 4, 2009 by Richard A. Cogdill [Docket No. 4329]

(the "Cogdill Declaration"), Daniel M. Aronson [Docket No. 4322] (the "Aronson Declaration"),

and William K. Snyder [Docket No. 4330] (the "Snyder Declaration"); (iii) the declaration filed

by the Debtors' Court-appointed voting and solicitation agent, Kurtzman Carson Consultants

LLC ("KCC"), dated December 4, 2009, regarding the methodology applied to the tabulation of

the voting results with respect to Plan [Docket No. 4324] (the "KCC Declaration"), (vi) each of

the objections to confirmation of the Plan (the "Objections"); and (vii) the Debtors' omnibus

response to the Objections filed December 4, 2009 [Docket No. 4321]; and all Objections having

been withdrawn, resolved, or otherwise overruled or addressed as set forth herein or by separate

further order of the Bankruptcy Court; and upon all of the proceedings had before the

Bankruptcy Court and upon the arguments of counsel and all of the evidence adduced at the

Confirmation Hearing; and the Bankruptcy Court having determined based upon all of the

foregoing that the Plan should be confirmed, as reflected by the Bankruptcy Court's rulings

---

[3] The Notice Affidavits have been filed at Docket Nos. 3472, 3649, 3650, 3667, 3784, 3786, 3806, 3873, 3875, 3878, 4065, 4076, 4126, 4127, 4128, 4149, 4151,4153, 4154, 4217, 4218, 4258 and 4293.

made herein and at the Confirmation Hearing; and after due deliberation and sufficient cause appearing therefor, the Bankruptcy Court hereby

FINDS, DETERMINES, AND CONCLUDES THAT:

        A.      Findings and Conclusions. The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

### Jurisdiction and Venue

        B.      Exclusive Jurisdiction, Venue, Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a)). The Bankruptcy Court has jurisdiction over the Debtors' chapter 11 cases pursuant to 28 U.S.C. § 1334. Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b) and the Bankruptcy Court has jurisdiction to enter a final order with respect thereto. The Debtors are eligible debtors under section 109 of the Bankruptcy Code. Venue is proper before the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Chapter 11 Cases

        C.      Commencement of the Chapter 11 Cases. On December 1, 2008 (the "Commencement Date"), the Debtors commenced with the Bankruptcy Court voluntary cases under chapter 11 of the Bankruptcy Code. By order of the Bankruptcy Court, dated December 3, 2008, the Chapter 11 Cases were consolidated for procedural purposes only and are being jointly administered. The Debtors have been operating their businesses and managed their properties as

debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee has been appointed in these Chapter 11 Cases.

        D.      Judicial Notice. The Bankruptcy Court takes judicial notice of (i) as appropriate, Proofs of Claims filed in the Debtors' Chapter 11 Cases, and (ii) the docket of the Debtors' Chapter 11 Cases maintained by the Clerk of the Bankruptcy Court and pleadings reflected therein, including, without limitation, all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at the hearings held before the Bankruptcy Court during the pendency of the Chapter 11 Cases.

**Solicitation and Notice**

        E.      Solicitation and Notice. On October 22, 2009, the Bankruptcy Court entered the Disclosure Statement Order, which, among other things, approved the Disclosure Statement, finding that it contained "adequate information" within the meaning of section 1125 of the Bankruptcy Code, and established procedures for the Debtors' solicitation of votes on the Plan. On November 17, 2009, the Bankruptcy Court entered the Election Procedures Order, which, among other things, approved procedures for holders of Allowed Note Claims to make the Cash-Out Election under the Plan. The Disclosure Statement, the Plan, the Ballots (as defined in the Disclosure Statement Order), the notice of the Confirmation Hearing, the notice of Cash-Out Election, and the Disclosure Statement Order (collectively, the "Solicitation Materials") were served in compliance with the Bankruptcy Rules, the Disclosure Statement Order and the Election Procedures Order, as applicable. As described in the KCC Declaration and the Notice Affidavits (i) the service of the Solicitation Materials was adequate and sufficient under the circumstances of these Chapter 11 Cases and (ii) adequate and sufficient notice of the Confirmation Hearing and other requirements, deadlines, hearings, and matters described in the

Disclosure Statement Order and the Election Procedures Order was timely provided in compliance with the Bankruptcy Rules, the Disclosure Statement Order and the Election Procedures Order.

        F.      <u>Voting</u>. Votes on the Plan were solicited after disclosure to holders of Claims against and Equity Interests in the Debtors of "adequate information" as defined in section 1125 of the Bankruptcy Code. As evidenced by the KCC Declaration, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules for the United States Bankruptcy Court for the Northern District of Texas (the "<u>Local Rules</u>").

        G.      <u>Plan Supplement</u>. On November 20, 2009, the Debtors filed the Plan Supplement, which includes the following documents: (i) summary of terms of the Exit Facility and a copy of the Credit Agreement, (ii) Schedules 8.1, 8.7 and 8.9 of the Plan, (iii) list of initial directors for the Reorganized Debtors, (iv) list of initial officers of Reorganized Debtors, (v) Amendment No. 1 to the Plan Sponsor's Form S-1 filed with the Securities and Exchange Commission on November 2, 2009, and (vi) JBS SA's most recent financial statements. On December 4, 2009 and December 8, 2009, the Debtors filed certain amendments to the Plan Supplement. All such materials comply with the terms of the Plan, and the filing and notice of such documents was good and proper and in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, and no other or further notice is or shall be required.

## Compliance with the Requirements of Section 1129 of the Bankruptcy Code

H.     Burden of Proof. The Debtors, as proponents of the Plan, have met their burden of proving the elements of sections 1129 of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard.

I.     Bankruptcy Rule 3016(a). The Plan is dated and identifies the Debtors as the Plan proponents, thereby satisfying Bankruptcy Rule 3016(a).

J.     Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1)). The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

i.     Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)). As required by section 1123(a)(1), in addition to Administrative Expense Claims, Priority Tax Claims, and DIP Claims, which need not be classified, Article III of the Plan designates fifty (50) Classes (inclusive of sub-Classes) of Claims against and Equity Interests in the Debtors. As required by section 1122(a) of the Bankruptcy Code, the Claims (to the extent treated as a Class) and Equity Interests placed in each Class are substantially similar to other Claims and Equity Interests, as the case may be, in each such Class. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Equity Interests created under the Plan, and such Classes do not effect unfair discrimination between holders of Claims and Equity Interests. Thus, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

ii.     Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)). Articles III and IV of the Plan specify that Classes 1(a)-(g), Classes 2(a)-(c), Class 3, Classes 4(a)-(g), Classes 5(a)-(g), Classes 6(a)-(c), Classes 7(a)-(g), Class 8, Classes 9(a)-(g) and Classes 10(b)-(g) are unimpaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

    iii.  <u>Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))</u>.

Articles III and IV of the Plan designate Class 10(a) is impaired and Article IV of the Plan sets

forth the treatment of such impaired Class, thereby satisfying section 1123(a)(3) of the

Bankruptcy Code.

    iv.  <u>No Discrimination (11 U.S.C. § 1123(a)(4))</u>. Article IV of the

Plan provides for the same treatment by the Debtors for each Claim or Equity Interest in each

respective Class unless the holder of a particular Claim or Equity Interest has agreed to a less

favorable treatment in respect of such Claim or Equity Interest, thereby satisfying

section 1123(a)(4) of the Bankruptcy Code.

    v.  <u>Implementation of the Plan (11 U.S.C. § 1123(a)(5))</u>. The Plan

and the various documents set forth in the Plan Supplement provide for adequate and proper

means for implementation of the Plan, including, without limitation, (a) the continued corporate

existence of the Debtors, (b) the corporate constituent documents that will govern the

Reorganized Debtors after the Effective Date, including, without limitation, the Restated

Certificates of Incorporation and the Restated By-Laws, (c) the entry into, and incurrence of new

indebtedness under, the Exit Facility Documents, (d) consummation of the transactions

contemplated by the SPA Documents (as defined below), (e) cancellation of Equity Interests in

PPC, (f) the issuance of New PPC Common Stock, (g) the cancellation of certain existing

agreements, obligations, instruments, and interests, (h) the continued vesting of the assets of the

Debtors' estates in the Reorganized Debtors, (i) the adoption of the New Employee Incentive

Plans, and (j) the execution, delivery, filing, or recording of all contracts, instruments, releases,

and other agreements or documents related to the foregoing, thereby satisfying section

1123(a)(5) of the Bankruptcy Code.

vi.     Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)). Section

9.5 of the Plan and the Reorganized Debtor Constituent Documents of Reorganized PPC prohibit

the issuance of nonvoting equity securities to the extent prohibited by section 1123(a)(6) of the

Bankruptcy Code and provide for an appropriate distribution of power among voting classes,

thereby satisfying section 1123(a)(6) of the Bankruptcy Code.   Section 1123(a)(6) does not

apply to the other Reorganized Debtors because such entities are not issuing securities under the

Plan.

vii.     Designation of Directors and Officers (11 U.S.C. § 1123(a)(7)).

The Reorganized Debtors' initial directors and officers are set forth in the Plan Supplement and

the Reorganized Debtor Constituent Documents for each Reorganized Debtor set out the

procedures for selection of subsequent directors and officers of each Reorganized Debtor.  Such

procedures are consistent with the interests of creditors and equity holders and public policy,

thereby satisfying section 1123(a)(7) of the Bankruptcy Code.

K.     Additional Plan Provisions (11 U.S.C. § 1123(b)). The additional

provisions of the Plan are appropriate and consistent with the applicable provisions of the

Bankruptcy Code, thereby satisfying section 1123(b) of the Bankruptcy Code.

i.     Impairment/Unimpairment of Any Class of Claims or Interests

(§ 1123(b)(1)). Pursuant to the Plan, Classes 1(a)-(g), Classes 2(a)-(c), Class 3, Classes 4(a)-(g),

Classes 5(a)-(g), Classes 6(a)-(c), Classes 7(a)-(g), Class 8, Classes 9(a)-(g) and Classes 10(b)-

(g) are unimpaired and Class 10(a) is impaired, as contemplated by section 1123(b)(1) of the

Bankruptcy Code.

ii.     Assumption and Rejection of Executory Contracts (11 U.S.C.

§ 1123(b)(2)). Article VIII of the Plan provides for the rejection of the executory contracts and

unexpired leases of the Debtors as of the Effective Date, except for any executory contract or unexpired lease (a) that has been assumed, assumed and assigned, or rejected pursuant to an order of the Bankruptcy Court entered on or before the Effective Date, (b) as to which a motion for approval of the assumption, assumption and assignment, or rejection has been filed and served prior to the Confirmation Date, (c) that is specifically designated as a contract or lease to be assumed or assumed and assigned on Schedule 8.1 of the Plan, which Schedule is contained in the Plan Supplement, or (d) that is designated as assumed pursuant to sections 8.6 through 8.9 of the Plan.

iii.    Other Appropriate Provisions (11 U.S.C. § 1123(b)(2)). The Plan's other provisions are appropriate and consistent with the applicable provisions of the Bankruptcy Code, including, without limitation, provisions for (a) distributions to holders of Claims and Equity Interests, (b) approval of and authorization to enter into the SPA Documents, to the extent not already approved by the Bankruptcy Court on October 7, 2009 [Docket No. 3620], (c) approval of and authorization to enter into the Exit Facility Documents, (d) retention of, and right to enforce, sue on, settle, or compromise (or refuse to do any of the foregoing with respect to) certain claims and causes of action against third parties, to the extent not waived and released under the Plan, (e) resolution of Disputed Claims, (f) allowance of certain Claims; (g) indemnification obligations, (h) releases by Debtors of certain parties; (i) releases by holders of Claims and Equity Interests; and (j) exculpations of certain parties.

L.    Cure of Defaults (11 U.S.C. § 1123(d)). Section 8.4 of the Plan provides for the satisfaction of default claims associated with each executory contract and unexpired lease to be assumed pursuant to the Plan in accordance with section 365(b)(1) of the Bankruptcy Code. The cure amounts identified in Schedule 8.1 of the Plan and the Assumption Notices and

Supplemental Assumption Notices, as applicable, represent the amount, if any, that the Debtors propose to pay in full and complete satisfaction of such default claims. Any disputed cure amounts will be determined in accordance with the underlying agreements, and applicable bankruptcy and nonbankruptcy law. Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

      M.     The Debtors' Compliance with the Bankruptcy Code (11 U.S.C.

§ 1129(a)(2)). The Debtors have complied with the applicable provisions of the Bankruptcy Code. Specifically:

      (a)     Each of the Debtors is an eligible debtor under section 109 of the Bankruptcy Code;

      (b)     The Debtors have complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Bankruptcy Court; and

      (c)     The Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules in transmitting the Plan, the Disclosure Statement, the Ballots, the Election Forms (as defined in the Election Procedures Motion), and related documents and notices and in soliciting and tabulating the votes on the Plan.

      N.     Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)). The Debtors have proposed the Plan (including the Plan Supplement, the SPA Documents and all other documents necessary to effectuate the Plan) in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. The Debtors' good faith is evident from the facts and record of these Chapter 11 Cases, the Disclosure Statement, and the record of the Confirmation Hearing and other proceedings held in these Chapter 11 Cases. The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' estates and to effectuate a successful reorganization of the Debtors. To the extent that the Plan was

opposed based on transactions intended by and between the Plan Sponsor and certain Insiders of the Debtors, those transactions are not part of the Plan and were not negotiated by the Debtors and so do not affect the Debtors' good faith. The Plan was negotiated at arms' length among representatives of the Debtors, the Creditors' Committee, the Equity Committee, the Plan Sponsor, the DIP Lenders, and the Debtors' prepetition lenders. Further, the Plan's classification, indemnification, exculpation, release, and injunction provisions have been negotiated in good faith and at arms' length, are consistent with sections 105, 1122, 1123(b)(6), 1129, and 1142 of the Bankruptcy Code, and are each necessary for the Debtors' successful reorganization.

O.      Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)). Any payment made or to be made by the Debtors, or by a person issuing securities or acquiring property under the Plan, for services or for costs and expenses in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been approved by, or is subject to the approval of, the Bankruptcy Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

P.      Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)). The Debtors have complied with section 1129(a)(5) of the Bankruptcy Code. The identity and affiliations of the persons proposed to serve as the initial directors and officers of the Reorganized Debtors after confirmation of the Plan have been fully disclosed in the Plan Supplement, and the appointment to, or continuance in, such offices of such persons is consistent with the interests of holders of Claims against and Equity Interests in the Debtors and with public policy. The identity of any insider that will be employed or retained by the Reorganized Debtors and the nature of such insider's compensation have also been fully disclosed.

Q.      No Rate Changes (11 U.S.C. § 1129(a)(6)). Section 1129(a)(6) of the
Bankruptcy Code is satisfied because the Plan does not provide for any rate changes over which
a governmental regulatory commission has jurisdiction.

R.      Best Interest of Creditors (11 U.S.C. § 1129(a)(7)). The Plan satisfies
section 1129(a)(7) of the Bankruptcy Code. Only Class 10(a) is impaired under the Plan. The
"best interest of creditors" test is satisfied. The liquidation analysis provided in the Disclosure
Statement (and as testified to in the Snyder Declaration) (i) is persuasive and credible, (ii) has
not been controverted by other evidence, (iii) is based on reasonable and sound assumptions, and
(iv) provides a reasonable estimate of the liquidation values upon conversion to a case under
chapter 7 of the Bankruptcy Code. Each holder of Equity Interests in Class 10(a) either has
accepted the Plan or will receive or retain under the Plan, on account of its Equity Interest,
property of a value, as of the Effective Date, that is substantially greater than the amount that
such holder would receive or retain if the applicable Debtor were liquidated under chapter 7 of
the Bankruptcy Code on such date. Based on the testimony and documentary evidence presented
at the Confirmation Hearing, the Bankruptcy Court finds that the holders of Claims and Equity
Interests in all Classes will receive at least as much under the Plan as they would have under a
chapter 7 liquidation. Accordingly, the Plan satisfies the "best interest of creditors" test under
section 1129(a)(7) of the Bankruptcy Code.

S.      Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)). Classes 1(a)-(g),
Classes 2(a)-(c), Class 3, Classes 4(a)-(g), Classes 5(a)-(g), Classes 6(a)-(c), Classes 7(a)-(g),
Class 8, Classes 9(a)-(g) and Classes 10(b)-(g) are unimpaired by the Plan and, accordingly,
holders of Claims in such Classes are conclusively presumed to have accepted the Plan pursuant
to section 1126(f) of the Bankruptcy Code. Class 10(a) is impaired by the Plan. At least two-

thirds in amount of the Allowed Equity Interests held by equity holders in Class 10(a) that voted, even excluding the votes of Insiders, have voted to accept the Plan, as established by the KCC Declaration, in accordance with 1126(d) of the Bankruptcy Code.

        T.      Treatment of Administrative Expense Claims, Priority Tax Claims, DIP Claims, Secured Tax Claims, and Other Priority Claims (11 U.S.C. § 1129(a)(9)). The treatment of Administrative Expense Claims, Priority Tax Claims, DIP Claims, Secured Tax Claims and Other Priority Claims pursuant to Articles II and III of the Plan satisfies the requirements of sections 1129(a)(9) of the Bankruptcy Code.

        U.      Acceptance By Impaired Class of Claims (11 U.S.C. § 1129(a)(10)). The Plan does not impair any Class of Claims. Accordingly, section 1129(a)(10) is inapplicable in these Chapter 11 Cases.

        V.      Feasibility (11 U.S.C. § 1129(a)(11)). The evidence proffered or adduced at the Confirmation Hearing and set forth in the Cogdill Declaration (i) is persuasive and credible, (ii) has not been controverted by other evidence, and (iii) establishes that the Plan is feasible and that there is a reasonable prospect of the Reorganized Debtors being able to meet their financial obligations under the Plan and their businesses in the ordinary course, and that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Reorganized Debtors, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

        W.      Payment of Fees (11 U.S.C. § 1129(a)(12)). All fees due and payable pursuant to section 1930 of chapter 123 of title 28, United States Code, as determined by the Bankruptcy Code, have been or will be paid on the Effective Date pursuant to Section 13.6 of the

Plan by the Debtors, thereby satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.

        X.     Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)). Section 8.10 of the Plan provides that on and after the Effective Date, the Reorganized Debtors shall continue to pay all retiree benefits of the Debtors (within the meaning of section 1114 of the Bankruptcy Code), if any, for the duration of the period for which the Debtors obligated themselves to provide such benefits, subject to the Reorganized Debtors' right to modify or terminate such benefits, if any, in accordance with the terms thereof, thereby satisfying the requirements of section 1129(a)(13) of the Bankruptcy Code.

        Y.     No Domestic Support Obligations (11 U.S.C. § 1129(a)(14)). The Debtors are not required by a judicial or administrative order, or by statute, to pay a domestic support obligation. Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

        Z.     Debtors Are Not Individuals (11 U.S.C. § 1129(a)(15)). The Debtors are not individuals, and accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

        AA.    No Applicable Nonbankruptcy Law Regarding Transfers (11 U.S.C. § 1129(a)(16)). The Debtors are each moneyed, business, or commercial corporations, and accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

        BB.    No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b)). Class 10(a), the only impaired Class, has voted to accept the Plan. Accordingly, section 1129(b) is inapplicable in these Chapter 11 Cases.

CC.     Only One Plan (11 U.S.C. § 1129(c)). The Plan is the only plan filed in these Chapter 11 Cases, and accordingly, section 1129(c) of the Bankruptcy Code is inapplicable in these chapter 11 cases.

DD.     Principal Purpose of the Plan (11 U.S.C. § 1129(d)). The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933, thereby satisfying section 1129(d) of the Bankruptcy Code.

EE.     Not Small Business Cases (11 U.S.C. § 1129(e)). These are not small business cases, and accordingly, section 1129(e) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

## Compliance with Section 1125 of the Bankruptcy Code

FF.     Good Faith Solicitation (11 U.S.C. § 1125(e)). Based on the record before the Bankruptcy Court in these Chapter 11 Cases, the Debtors, the Creditors' Committee, the Equity Committee, the Plan Sponsor, their respective members, directors, officers, employees, representatives, attorneys, financial advisors, investment bankers, and other professionals, and all other persons involved in the solicitation process, have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules in connection with all of their respective activities relating to the solicitation of acceptances to the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code. The parties identified in Section 10.7 of the Plan as being exculpated (the "Exculpated Parties"), and each of the Exculpated Parties' respective officers, directors, employees, accountants, financial advisors, investment bankers, agents, restructuring advisors (including all crisis and turnaround managers),

and attorneys, and each of their respective agents and representatives (but, in each case, solely in connection with their official capacities in these Chapter 11 Cases) shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and sale under the Plan of New PPC Common Stock, and the offer and sale under the Plan of equity interests in the Plan Sponsor pursuant to the Mandatory Exchange Transaction, and therefore are not, and on account of such offers and sales will not be, liable at any time for any violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer and sale under the Plan of New PPC Common Stock or equity interest in the Plan Sponsor pursuant to the Mandatory Exchange Transaction are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Section 10.7 of the Plan.

## Plan Implementation

GG.    The terms of the Plan, including without limitation the Plan Supplement and all exhibits and schedules thereto, the SPA Documents, and all other documents filed in connection with the Plan and/or executed or to be executed in connection with the transactions contemplated by the Plan, and all amendments and modifications of any of the foregoing (collectively, the "Plan Documents") are incorporated by reference, are, except as addressed herein or in any future order of the Bankruptcy Court contemplated by this Confirmation Order, proper in all respects, and constitute an integral part of this Confirmation Order.

HH.    The Plan and the Plan Documents have been negotiated in good faith and at arms' length and shall, on and after the Effective Date, except as addressed herein or in any future order of the Bankruptcy Court contemplated by this Confirmation Order, constitute legal,

valid, binding and authorized obligations of the respective parties thereto and will be enforceable in accordance with their terms.

II.     Pursuant to section 1142(a) of the Bankruptcy Code, except as addressed herein or in any future order of the Bankruptcy Court contemplated by this Confirmation Order, the Plan and the Plan Documents will apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law. The Debtors, the Creditors' Committee, the Equity Committee, the Plan Sponsor, the DIP Lenders, the Debtors' prepetition lenders, the lenders under the Exit Facility, and all of their respective members, officers, directors, agents, financial advisers, investment bankers, attorneys, employees, equity holders, partners, affiliates, and representatives will be acting in good faith if they proceed to (i) consummate the Plan and the agreements, settlements, transactions, transfers and documentation contemplated thereby and (ii) take any actions authorized and directed by this Confirmation Order.

JJ.     Exit Facility. The availability and funding of the loan proceeds to be available under the Exit Facility are necessary to the consummation of the Plan, the closing of the transactions contemplated by the SPA, and the operation of the Reorganized Debtors. The terms and conditions of the Exit Facility are fair and reasonable under the circumstances. The Debtors provided sufficient and adequate notice of the Exit Facility. The execution, delivery, and performance by the Debtors or Reorganized Debtors, as the case may be, of any documents in connection with the Exit Facility, and performance by the Debtors or Reorganized Debtors, as the case may be, with the terms thereof is authorized by, and will not conflict with, the terms of the Plan or this Confirmation Order. The financial accommodations to be extended pursuant to the Exit Facility Documents are being extended in good faith, for legitimate business purposes, are reasonable, and shall not be subject to recharacterization for any purposes whatsoever.

Moreover, the Exit Facility has been negotiated in good faith and at arms' length and each party thereto may rely on the provisions of this Confirmation Order in closing the Exit Facility.

      KK.   Stock Purchase Agreement. The SPA and all transactions, agreements and documents related thereto (the "SPA Documents") are essential elements of the Plan and entry into and consummation of the SPA Documents is in the best interests of the Debtors, their estates, their creditors and their equity holders. Entry into the SPA Documents presents the best opportunity to realize the highest value for the Debtors' estates, taking into account all relevant factors and circumstances. The Debtors exercised sound business judgment in determining to enter into the SPA Documents. The Debtors have provided all interested parties with sufficient and adequate notice of and an opportunity to be heard on the SPA Documents. The Plan Sponsor, its equity holders, directors, officers, employees, and advisors, have acted in good faith in connection with the Plan Documents, these Chapter 11 Cases and the formulation and confirmation of the Plan. Moreover, the SPA Documents were negotiated and have been or will be undertaken by the Debtors, the Plan Sponsor and their respective equity holders, directors, officers, employees, and advisors at arms-length, without collusion and in good faith within the meaning of section 363(m) of the Bankruptcy Code. As a result of the foregoing, the Plan Sponsor is a "good faith purchaser" and the Debtors and the Plan Sponsor are entitled to the protections of section 363(m) of the Bankruptcy Code (*provided, however*, that the Bankruptcy Court makes no finding respecting any agreement between the Plan Sponsor and any member of the board of directors of PPC). Neither the Debtors nor the Plan Sponsor have engaged in any conduct that would cause or permit the SPA Documents to be avoided under section 363(n) of the Bankruptcy Code. The terms and provisions of the SPA Documents, to the extent not already approved by the Bankruptcy Court on October 7, 2009 [Docket No. 3620], are approved

pursuant to this Confirmation Order and shall, upon the Effective Date, be valid, binding, and enforceable in accordance with their terms and shall not be in conflict with any federal or state law.

LL.  New Employee Incentive Plans. The Debtors exercised sound business judgment in adopting the New Employee Incentive Plans. The Debtors have provided sufficient and adequate notice of the New Employee Incentive Plans to all parties in interest. As set forth in the KCC Declaration, holders of Equity Interests in Class 10(a) voted for adoption of the New Employee Incentive Plans.

MM.  Distribution of Securities. Pursuant to section 1145 of the Bankruptcy Code, (i) the offer and sale under the Plan of New PPC Common Stock and (ii) the offer and sale under the Plan of equity interests in the Plan Sponsor pursuant to the Mandatory Exchange Transaction, are each exempt from the requirements of the Securities Act of 1933, as amended, and all rules and regulations promulgated thereunder, and applicable state securities laws.

## Executory Contracts and Unexpired Leases

NN.  The Debtors have exercised sound business judgment in determining whether to assume or reject each of their executory contracts and unexpired leases pursuant to Article VIII of the Plan. Each assumption or rejection of an executory contract or unexpired lease as provided in Sections 8.1 and 8.6 through 8.9 of the Plan shall be legal, valid, and binding upon the applicable Reorganized Debtor and all non-debtor counterparties to such contracts or leases, all to the same extent as if such assumption or rejection has been effectuated pursuant to an appropriate authorizing order of the Bankruptcy Court before the Confirmation Date under section 365 of the Bankruptcy Code.

OO.    Except with respect to those executory contracts and unexpired leases listed on **Exhibit C** hereto, with respect to which a hearing to resolve an objection to the Debtors' proposed cure amount or assumption/rejection is adjourned to a later date, the Debtors have cured, or provided adequate assurances that the Reorganized Debtors will cure, defaults (if any) under or relating to each of the executory contracts and unexpired leases being assumed under the Plan.  For clarification purposes, the Debtors agree that the listing of any cure amount as $0 with respect to any of the executory contracts assumed pursuant to Section 8.9(d),(f) –(h) of the Plan does not affect any validly filed Proofs of Claim that the contract counterparty may have filed with respect to any purchase orders or other billings issued under such executory contract; and all such claims will be resolved pursuant to the claims resolution process set forth in the Plan.

**Exculpations, Injunctions and Releases**

PP.    The Bankruptcy Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code to address the exculpation, injunctions and releases set forth in Article X of the Plan.  The Court will address Article X of the Plan by separate order.

**Other Findings**

QQ.    Valuation.  The valuation analysis in Article VII of the Disclosure Statement and the total enterprise value described therein are reasonable.

RR.    Conditions Precedent to Confirmation.  The Debtors have satisfied all conditions precedent to confirmation set forth in Section 11.1 of the Plan.

SS.    Retention of Jurisdiction.  The Bankruptcy Court may properly retain, and if appropriate, shall exercise jurisdiction over the matters set forth in Article XII(a), (c)-(i), (l)-(q), and (t)-(v) of the Plan and section 1142 of the Bankruptcy Code.  To the extent consistent

with the Bankruptcy Code and any prior or future order of the Bankruptcy Court, the Bankruptcy Court may further retain jurisdiction over the matters set forth in Article XII(b), (j)-(k), and (r)-(s) of the Plan.

TT.     Objections.  All parties have had a full and fair opportunity to litigate all issues raised by objections to confirmation of the Plan, or which might have been raised, and the objections to confirmation have been fully and fairly litigated.

UU.     The Court finds that no evidence has been introduced that the treatment of Class 6 is inconsistent with the Indentures, subject to any determination that may be made of those issues set forth in Paragraph 17 of this Confirmation Order.

### The Plan Satisfies Confirmation Requirements

VV.     Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.     Solicitation and Notice.  Notice of the Confirmation Hearing complied with the terms of the Disclosure Statement Order, was appropriate and satisfactory based upon the circumstances of the Debtors' Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.  The solicitation of votes on the Plan and the distribution of the Election Forms (as defined in the Election Procedures Motion) complied with the solicitation procedures in the Disclosure Statement Order and the Election Procedures Order, as applicable, were appropriate and satisfactory based upon the circumstances of the Debtors' Chapter 11 Cases, and were in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

2.     <u>Confirmation</u>. The Plan, as further modified prior to the Confirmation Hearing in the form annexed hereto as **Exhibit A** (with any changes made to the Plan since November 17, 2009, attached hereto as **Exhibit B**), and each of its provisions, except as provided in this Confirmation Order or future order of this Bankruptcy Court contemplated by this Confirmation Order, shall be, and hereby is, confirmed under section 1129 of the Bankruptcy Code. The terms of the Plan Documents are incorporated by reference into and are an integral part of the Plan and this Confirmation Order.

3.     <u>Objections</u>. All objections, responses, statements, and comments in opposition to the Plan, other than those withdrawn with prejudice in their entirety prior to the Confirmation Hearing or otherwise resolved on the record of the Confirmation Hearing and/or herein or addressed by this Confirmation Order or any future order of the Bankruptcy Court contemplated by this Confirmation Order are overruled for the reasons stated on the record. Those objections to cure amounts and/or assumption/rejection of certain contracts listed on **Exhibit C** hereto are adjourned to a date indicated therein.

4.     <u>Binding Effect</u>. Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, on or after entry of this Confirmation Order and subject to the occurrence of the Effective Date, the provisions of the Plan shall bind (i) any holder of a Claim against or Equity Interest in the Debtors and their respective successors and assigns, whether or not such Claim or Equity Interest of such holder is impaired under the Plan and whether or not such holder has filed a proof of claim or accepted the Plan, (ii) any and all non-debtor parties to assumed executory contracts and unexpired leases with any of the Debtors, (iii) and any other party in interest in the Chapter 11 Cases, and the respective heirs, executors, administrators, successors, or assigns.

5.     Continued Corporate Existence.  Each Reorganized Debtor shall continue to exist after the Effective Date as a separate legal entity, with all the power of a corporation or a legal entity under applicable law in the jurisdiction in which each Debtor is incorporated or otherwise formed and pursuant to its Reorganized Debtor Constituent Documents.

6.     Vesting of Assets (11 U.S.C. § 1141(b), (c)).  As set forth in Section 10.1 of the Plan, as of the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property of each Debtors' estates shall vest in the applicable Reorganized Debtor, free and clear of all Claims, liens, encumbrances, charges, and other interests, except as provided in the Plan or in this Confirmation Order.  Any licenses or rights to use software, firmware and other intellectual property that were property of the Debtors' estates, or that were licensed to the Debtors on a fully paid basis, shall continue to vest in the Reorganized Debtors on the Effective Date.  From and after the Effective Date, the Reorganized Debtors may operate their business and use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code, but in accordance with the provisions of the Plan.  The vesting, on the Effective Date, of the property of the Debtors' estates in the Reorganized Debtors does not constitute a voidable transfer under the Bankruptcy Code or applicable nonbankruptcy law.

7.     Claims of Prepetition Lenders.  On the Effective Date, BMO and CoBank, in their capacity as agents for the lenders that are party from time to time to the Prepetition BMO Credit Agreement and the Prepetition CoBank Credit Agreement, respectively, shall be deemed to have an allowed BMO Secured Claim and an allowed CoBank Secured Claim, respectively, which will be fully secured and not subject to any avoidance, recharacterization, disallowance, subordination, recoupment, setoff, defense or counterclaim. Upon payment of the allowed BMO Secured Claim and the allowed CoBank Secured Claim, all mortgages, deeds of trust, liens, and

other security interests granted to secure the Prepetition BMO Credit Agreement and the
Prepetition CoBank Credit Agreement shall be deemed cancelled, terminated, released,
discharged, and extinguished and shall be of no further force and effect. To the extent that BMO
or CoBank, or any of the lenders party to the Prepetition BMO Credit Agreement or the CoBank
Credit Agreement (each a "Filing Lender"), have filed or recorded publicly any liens, financing
statements and/or security interests to secure the Debtors' obligations under the Prepetition BMO
Credit Agreement or the Prepetition CoBank Credit Agreement, as the case may be, such Filing
Lender shall promptly take any and all commercially reasonable steps requested by the Debtors
that are necessary to cancel, terminate, release, discharge and/or extinguish such publicly-filed
liens, financing statements and/or security interests.

        8.     DIP Claims. Upon payment of the DIP Claims as provided in Section 2.4
of the Plan, if any such payment is due, all mortgages, deeds of trust, liens, and other security
interests granted to secure the DIP Credit Agreement shall be deemed cancelled, terminated,
released, discharged and extinguished and shall be of no further force and effect. To the extent
that BMO, or any of the lenders party to the DIP Credit Agreement (each a "Filing DIP
Lender"), have filed or recorded publicly any liens, financing statements and/or security interests
to secure the Debtors' obligations under the DIP Credit Agreement, such Filing DIP Lender shall
promptly take any and all commercially reasonable steps requested by the Debtors that are
necessary to cancel, terminate, release, discharge and/or extinguish such publicly-filed liens,
financing statements and/or security interests.

        9.     Intercompany Claims. The treatment of Intercompany Claims in Section
4.8 of the Plan is approved in its entirety.

10.    <u>Releases of Liens</u>. Except as otherwise provided in the Plan or this Confirmation Order, or in any contract, instrument, release, or other agreement or document entered into or delivered in connection with the Plan, including the Exit Facility Documents, concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, liens, and other security interests against the property of any Debtor estate shall be fully cancelled, terminated, released, discharged and extinguished (except to the extent expressly reinstated under the Plan), and all right, title, and interest of any holder of such mortgages, deeds of trust, financing statements, liens, and other security interests, including any rights to any collateral thereunder, shall revert to the applicable Reorganized Debtor and its successors and assigns. For the avoidance of doubt, any statutory liens imposed on Allowed Secured Tax Claims or any postpetition taxes shall not be released and discharged until such Claims or postpetition taxes, as applicable, are paid pursuant the Plan or in the ordinary course of business, as applicable.

11.    <u>Retained Assets</u>. To the extent that the succession to assets of the Debtors by the Reorganized Debtors pursuant to the Plan are deemed to constitute "transfers" of property, such transfers of property to the Reorganized Debtors (a) are or shall be legal, valid, and effective transfers of property, (b) vest or shall vest the Reorganized Debtors with good title to such property, free and clear of all liens, charges, Claims, encumbrances, or interests, except as expressly provided in the Plan or this Confirmation Order, (c) do not and shall not constitute avoidable transfers under the Bankruptcy Code or under applicable nonbankruptcy law, and (d) do not and shall not subject he Reorganized Debtors to any liability by reason of such transfer under the Bankruptcy Code or under applicable nonbankrupcy law, including, without limitation, by laws affecting successor or transferee liability.

12.    Objections to Claims.

(a)    General. Objections to all Claims against the Debtors (other than

pursuant to section 510 of the Bankruptcy Code) may be interposed and prosecuted only by the

Debtors and the Reorganized Debtors (except for Claims asserted under sections 330, 331,

503(b)(2), 503(b)(3), 503(b)(4) and 503(b)(5), in which case the Committees and the Office of

the United States Trustee may also interpose and prosecute objections). Prior to the Effective

Date, except for objections that in the reasonable determination of the Debtors need to be filed

on an emergency basis, the Debtors shall provide three (3) calendar days prior notice to the Plan

Sponsor of their intent to file an objection to Claims and if timely requested by the Plan Sponsor,

shall work with the Plan Sponsor in interposing such an objection. If any portion of a Claim is a

Disputed Claim, no payment or distribution shall be made on account of such Claim unless and

until such Claim becomes an Allowed Claim.

(b)    Administrative Expense Claims. The holder of an Administrative

Expense Claim, other than (i) a claim covered by sections 2.2, 2.3, or 2.4 of the Plan, (ii) a

liability incurred and payable in the ordinary course of business by a Debtor (and not past due),

(iii) an Administrative Expense Claim that has been Allowed on or before the Effective Date, or

(iv) a claim subject to section 503(b)(9) of the Bankruptcy Code (with respect to which the

deadline to file requests for payment has already expired), must file with the Bankruptcy Court

and serve on the Debtors, the Reorganized Debtors, and the Office of the United States Trustee,

notice of such Administrative Expense Claim on or prior to, unless otherwise ordered by the

Bankruptcy Court, sixty (60) days after the later of (i) Effective Date, (ii) the date on which the

claimant either knew or should have known of such Administrative Expense Claim, and (iii) in

the event of a Claim for taxes, the date the tax return is due. Such notice must include at a

minimum (A) the name of the Debtor(s) which are purported to be liable for the Claim, (B) the name of the holder of the Claim, (C) the amount of the Claim, and (D) the basis of the Claim. An Administrative Expense Claim with respect to which notice has been properly filed and served pursuant to Section 2.1(a) of the Plan shall become an Allowed Administrative Expense Claim if no objection is filed on or prior to the Administrative Expense Claims Objection Deadline. If an objection is timely filed, the Administrative Expense Claim shall become an Allowed Administrative Expense Claim only to the extent allowed by Final Order or settled, compromised, otherwise resolved by the Debtors or Reorganized Debtors pursuant to section 7.4 of the Plan.

(c)     All Other Claims. Objections to Claims against the Debtors (other than Administrative Expense Claims and Professional Compensation Claims) shall be served and filed on or before the later of (a) one hundred and fifty (150) days after the Effective Date and (b) such later date as may be fixed by the Bankruptcy Court.

13.     Estimation of Claims. Requests for estimation of any Claim against the Debtors may be interposed and prosecuted only by the Debtors or the Reorganized Debtors. Prior to the Effective Date, except for estimation requests that in the reasonable determination of the Debtors need to be made on an emergency basis, the Debtors shall provide three (3) calendar days prior notice to the Plan Sponsor of their intent to request estimation of any Claim and if timely requested by the Plan Sponsor, shall work with the Plan Sponsor in interposing such a request. The Debtors or the Reorganized Debtors may at any time request that the Bankruptcy Court estimate any Contingent Claim, Unliquidated Claim, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether any of the Debtors or the Reorganized Debtors previously objected to such Claim or whether the Bankruptcy Court has

ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection; *provided, however,* that the Bankruptcy Court shall not have jurisdiction to estimate a Claim with respect to which a reference has been withdrawn or as to which the Bankruptcy Court lacks jurisdiction. In the event that the Bankruptcy Court estimates any Contingent Claim, Unliquidated Claim, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtors or the Reorganized Debtors may pursue supplementary proceedings to object to the allowance of such Claim. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

14. Record Date for Claim Distributions. The Reorganized Debtors and the Disbursing Agents shall have no obligation to recognize the transfer of, or the sale of any participation in, any Allowed Claim that occurs after the third (3rd) day following the Confirmation Date (the "Claims Distribution Record Date"), and shall be entitled for all purposes herein to recognize and distribute only to those holders of Allowed Claims who are holders of such Claims, or participants therein, as of the Claims Distribution Record Date.

15. Record Date for Equity Distributions. The Reorganized Debtors and the Disbursing Agents shall have no obligation to recognize the transfer of any Equity Interest that occurs after the Effective Date (the "Equity Distribution Record Date"), and shall be entitled for all purposes herein to recognize and distribute only to those holders of Equity Interests who are holders of such Equity Interests as of the Equity Distribution Record Date.

16.   <u>Note Claim Distributions</u>. Distributions to holders of Allowed Note Claims shall be made pursuant to Section 4.6(b) of the Plan and shall be deemed to have been made from proceeds of the sale of New PPC Common Stock to the Plan Sponsor pursuant to the terms of the SPA. Any holder of an Allowed Note Claim that makes the Cash-Out Election shall as of the Effective Date be deemed to have waived all subordination rights under the applicable Indenture and applicable law. Distributions to holders of Allowed Senior Note Claims shall be deemed to occur immediately before any distributions under the Plan to holders of Allowed Subordinated Note Claims and Allowed Senior Subordinated Note Claims. Holders of Allowed Note Claims that make the Cash-Out Election shall be deemed to have been paid in full upon delivery to the applicable Disbursing Agent of Cash sufficient to make all distributions to such holders of Allowed Note Claims under Section 4.6(b)(ii) of the Plan and all right, title, and interest of holders of Allowed Note Claims that make the Cash-Out Election shall be deemed fully cancelled, terminated, released, discharged and extinguished when such holder's Allowed Note Claim is deemed to have been paid in full.

17.   <u>Briefing Schedule</u>. The Debtors or the Reorganized Debtors, as applicable, and the applicable Indenture Trustees shall present to the Court within fifteen (15) Business Days after the Election Deadline (as defined in the Election Procedures Order) an agreed proposed briefing and scheduling order with respect to whether: (i) the Debtors are obligated to pay the holders of the Notes that are reinstated pursuant to section 1124 of the Bankruptcy Code (the "<u>Reinstated Notes</u>") (x) accrued interest at the additional or default rate specified in their respective Notes or Indentures rather than at the non-default contract rate specified therein, and (y) interest at the additional or default rate, rather than the non-default contract rate on defaulted payments of interest ((x) and (y), together, the "<u>Additional Interest</u>