

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

Signed January 14, 2010                                  **United States Bankruptcy Judge**

---

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PILGRIM'S PRIDE CORPORATION, | § | CASE NO. 08-45664-DML-11 |
| *ET AL.*, | § | |
| | § | |
| DEBTORS. | § | |
| | § | JOINTLY ADMINISTERED |

### MEMORANDUM OPINION AND ORDER

Before the court is *Debtors' Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (as Modified)* (the "Plan"). Specifically, numerous parties have objected to language in Articles VIII and X of the Plan which purport to protect certain third parties against claims and causes of action arising from claims against them that arose prior to or during the pendency of the Chapter 11 Cases.[1] The court must ensure that the protections provided in Articles VIII and X comply with applicable law, including the Fifth Circuit Court of Appeals' opinion in *Bank of New*

---

[1] The term "Chapter 11 Cases" is assigned the definition it was given in the Plan. Paragraph 1.22 of the Plan.

*York Trust Co. v. Official Unsecured Creditors' Committee (In re Pacific Lumber Co.)*, 584 F.3d 229 (5th Cir. 2009).

Evidence respecting confirmation of the Plan (including Articles VIII and X) was presented at a hearing on December 8, 2009. The question of the permissible scope of protections for third parties was argued to the court at a continuation of that hearing on December 9 (both dates together, the "Confirmation Hearing"). Legal argument supporting the third-party protections was presented by Debtors and the Official Committee of Equity Security Holders (the "Equity Committee"); legal argument in opposition to the third-party protections was presented by the plaintiffs in a civil RICO suit, two personal injury claimants from Georgia, a number of ERISA plaintiffs, and several counterparties to Debtors' chicken growing contracts. Following the Confirmation Hearing, the court, as discussed below, reserved for further decision the scope of relief that would be granted to third parties in connection with the Plan.

This matter is subject to the court's core jurisdiction. 28 U.S.C. §§ 1334 and 157(b)(2)(L). This memorandum opinion and order embodies the court's findings of fact and conclusions of law.[2] FED. R. BANKR. P. 7052 and 9014.

## I. Background

On December 1, 2008, Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code (the "Code").[3] The Chapter 11 Cases culminated with the filing of

---

[2] The court, as discussed below, has previously entered findings of fact and conclusions of law in connection with all questions pertaining to confirmation of the Plan other than those addressed in this memorandum opinion and order.

[3] 11 U.S.C. §§ 101 *et seq.*

the Plan, which provided for 100% payment of all allowed claims (including interest) and retention of 36% of the ownership of Debtors (representing over $4 value per share of common stock) by equity owners. Numerous parties objected to the Plan on feasibility grounds, but the court overruled those objections and confirmed the plan by entry of its *Findings of Fact, Conclusions of Law, and Order Confirming Debtors' Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (as Modified)* (the "Confirmation Order") on December 10, 2009. Confirmation of the Plan has not been appealed, though several parties have filed pleadings seeking clarification of or changes to the Confirmation Order. The effect of the Confirmation Order was not stayed, however, and the court is informed that the Plan has become effective and been substantially consummated (Code § 1101(2)).

The Confirmation Order specifically did not address Article X of the Plan, which contains various third-party protections.[4] Instead, the Confirmation Order provided temporary relief that will terminate upon the entry of this memorandum opinion and order. In addressing Article X of the Plan, the court must also examine and address Article VIII of the Plan which, in Paragraph 8.6, provides that Debtors are required to indemnify certain of the parties protected by Article X.

## II. Discussion

The Plan proposes to deal with three kinds of claims that might be made against third parties.[5] First are claims as to which both one or more of Debtors and a third party

---

[4] Confirmation Order, p. 21, ¶ PP.

[5] That Debtors have addressed all three categories does not mean they (or the court) are aware of claims in every category.

have liability. Second are claims against third parties arising from conduct they engaged in prior to commencement of the Chapter 11 Cases as to which none of Debtors has direct liability. Third are claims against third parties that arose by reason of their conduct during the Chapter 11 Cases (which conduct pertained to those cases) as to which Debtors have no liability.[6] Debtors propose to protect parties as to the first two categories through indemnification and injunctive relief. As to the third category, Debtors have included in Paragraphs 10.4, 10.7, and 10.8 of the Plan injunctive and exculpatory language that would protect the third parties from claims based on proper or only negligent conduct.

Paragraph 8.6 of the Plan requires Debtors to assume all obligations they had as of the Commencement Date[7] to indemnify their directors, officers, and employees as provided in Debtors' certificates of incorporation, bylaws, or other organizational documents or other applicable law. Paragraph 8.6 also enjoins the prosecution of any indemnified cause of action against Debtors or any non-debtor indemnified party except for the purpose of recovering from available insurance policy proceeds. *See* Paragraph 8.6 of the Plan.

Section 524(e) of the Code, on its face, prevents the court from approving protections of third parties that would prevent pursuit of those parties as to debts owed by them as to which they are co-liable with Debtors. *See* Code § 524(e)("discharge of a debt of the debtor does not affect the liability of any other entity on… such debt."); 4 COLLIER ON BANKRUPTCY ¶ 524.05 (16th ed. 2009). Thus, to the extent that the Plan purports to

---

[6] This category, as delineated by Debtors, also arguably may cover some actions taken by third parties prior to bankruptcy in anticipation of bankruptcy.

[7] The term "Commencement Date" is assigned the definition it was given in the Plan. Paragraph 1.32 of the Plan.

bar such claims against third parties – to say nothing of prepetition claims against third parties for which Debtors (but for any indemnity obligation) would have no liability – such relief cannot be granted.

On the other hand, the Plan provides for payment in full of all claims for which Debtors have liability, including where that liability is limited to an indemnity. Thus, while the court may not prevent suits against third parties even if Debtors have indemnified them, the court may certainly, on a case-by-case basis, provide relief from such suits where Debtors accept liability and wish to avoid or minimize the cost of defense. To that end, persons indemnified by Debtors and Debtors themselves should be able to take full advantage of the removal and transfer provisions of the United States Judicial Code or, if appropriate, such as in a case where Debtors acknowledge liability and the amount of a claim, to seek injunctive relief.[8]

Paragraph 10.4 of the Plan provides that any holder of a Claim against or Equity Interest[9] in Debtors is, as of the Effective Date, permanently enjoined from, *inter alia*, "commencing or continuing in any manner any action or other proceeding of any kind" against Debtors, the Reorganized Debtors, and any Protected Person. *See* Paragraph 10.4 of the Plan.[10]

---

[8] Injunctive relief would also be appropriate to prevent a double recovery against indemnified parties in cases in which Debtors have agreed to and satisfied the liability.

[9] The terms "Claim" and "Equity Interest" are assigned the definitions they were given in the Plan. *See*, respectively, Paragraphs 1.25 and 1.56 of the Plan.

[10] The terms "Reorganized Debtors" and "Effective Date" are assigned the definitions they were given in the Plan. *See*, respectively, Paragraphs 1.93 and 1.53 of the Plan. The Effective Date was December 18, 2009.

The definition of "Protected Persons" in the Plan (Paragraph 1.91) is: "(a) the present and former directors, officers, employees, affiliates, agents, financial advisors, investment bankers, attorneys, and representatives of the Debtors (including the Chief Restructuring Officer), (b) the Committees, (c) the agents and lenders under the Prepetition BMO Credit Agreement, (d) the agents and lenders

Paragraph 10.7 of the Plan is an exculpation provision which relieves numerous third parties including, *inter alia*, the Equity Committee and Official Committee of Unsecured Creditors (each a "Committee" and together, the "Committees") and the Chief Restructuring Officer[11] from any liability for any acts or omissions, with some exceptions, that were related to the Chapter 11 Cases. Paragraph 10.7 of the Plan states:

> Nothwithstanding anything herein to the contrary, as of the Effective Date, none of the Debtors, the Reorganized Debtors, the Committees, the Chief Restructuring Officer, the agents and lenders under the Prepetition BMO Credit Agreement and the Prepetition CoBank Credit Agreement, the agents and lenders party to the DIP Credit Agreement, the Settling Unions, the Plan Sponsor, and their respective directors, officers, employees, partners, members, agents, representatives, accountants, financial advisors, investment bankers, or attorneys (but solely in their capacities as such) shall have or incur any liability for any claim, cause of action or other assertion of liability for any act taken or omitted to be taken since the Commencement Date in connection with, or arising out of, the Chapter 11 Cases, the formulation, dissemination, confirmation, consummation, or administration of the Plan, property to be distributed under the Plan, or any other act or omission in connection with the Chapter 11 Cases, the Plan, the Disclosure Statement or any contract, instrument, document or other agreement related thereto; <u>provided, however</u>, that the forgoing shall not affect the liability of any person that would otherwise result from any such act or omission to the extent such act or omission is determined by a Final Order to have constituted willful misconduct, gross negligence, fraud, criminal conduct, intentional unauthorized misuse of confidential information that causes damages, or *ultra vires* act.

Paragraph 10.8 of the Plan contains similar language that requires creditors to "release and discharge unconditionally and forever each (i) Debtor, (ii) Reorganized Debtor and (iii) Protected Person from any and all claims and causes of action that exist

---

  under to [sic] the Prepetition CoBank Credit Agreement, (e) the agents and lenders under the DIP Credit Agreement, (f) Pilgrim Interests, Ltd. (solely in its capacity as guarantor under the Guarantee Agreements), (g) the Plan Sponsor, and (h) the present and former directors, officers, employees, affiliates, agents, financial advisors, investment bankers, attorneys, and representatives of each of the forgoing in clauses (b) through (g)."

[11]  The term "Chief Restructuring Officer" is assigned the definition it was given in the Plan. Paragraph 1.24 of the Plan.

as of the Effective Date" for acts or omissions of such parties that were related to the Chapter 11 Cases, with the exception of "claims or causes of action arising out of the willful misconduct, gross negligence, fraud, criminal conduct, intentional unauthorized misuse of confidential information that causes damages, or *ultra vires* acts." *See* Paragraph 10.8 of the Plan.

In effect, Articles VIII and X of the Plan (specifically, Paragraphs 8.6, 10.4, 10.7, and 10.8) prevent creditors and shareholders from pursuing most potential claims or causes of action against Debtors and third parties of Debtors including, *inter alia*, Debtors' directors, officers, financial advisors, and attorneys; the Committees and their members and professionals; and Pilgrim Interests, Ltd. (solely in its capacity as guarantor under the Guarantee Agreements[12]).

In addition to other applicable law, however, recent Fifth Circuit precedent has limited the permissibility of third-party protections such as those found in Articles VIII and X. *See Bank of New York Trust Co. v. Official Unsecured Creditors' Committee (In re Pacific Lumber Co.)*, 584 F.3d 229, 253 (5th Cir. 2009).

**A. Debtors**

The releases found in Article X, in so far as they apply to Debtors and the Reorganized Debtors, are valid to the extent consistent with sections 524 and 1141 of the Code. Section 1141(d) provides for a discharge of Debtors that extends to most claims that may have been asserted against them. Section 524(a)(2) of the Code provides that a

---

[12] The term "Guarantee Agreements" is assigned the definition it was given in the Plan. Paragraph 1.67 of the Plan.

discharge granted pursuant to the Code operates as an injunction against pursuit of a discharged debtor for any discharged claim.

### B. Committees and their Professionals

While *Pacific Lumber* limits the protection the court may provide to third parties pursuant to a plan, it also expressly acknowledges that committees and their members are entitled to qualified immunity for any acts or omissions during a chapter 11 case that were within the scope of their duties. *See Pacific Lumber*, 584 F.3d at 253. In order to overcome a committee's qualified immunity and hold it or its members liable for an alleged wrongdoing, a plaintiff must show that such wrongdoing was the result of willful misconduct or *ultra vires* activity. *See, e.g.*, *In re PWS Holding Corp.*, 228 F.3d 224, 246 (3d Cir. 2000); *Pan Am Corp. v. Delta Air Lines*, 175 B.R. 438, 514 (S.D.N.Y. 1994); 7 COLLIER ON BANKRUPTCY ¶ 1103.05(4)(a) (15th ed. rev. 2006).

The qualified immunity afforded to committees and their members has also been held to be avaliable to those professionals who provide services to a committee and assist it in fulfilling its duties. *PWS Holding Corp.*, 228 F.3d at 246; *In re Refco Inc.*, 336 B.R. 187 (Bankr. S.D.N.Y. 2006).

Protections provided to the Committees, members of the Committees, and the Committees' Professionals[13] comply with the law because they do not extend to immunity from liability for willful misconduct or *ultra vires* activity. In fact, Paragraph 10.8 provides a broader exception to the exculpation of the Committees than appears to be required by relevant precedent.

---

[13] The Committees' Professionals include any person or entity employed by the Committees under sections 327, 1102, and 1103 of the Code.

**C. Other Third Parties**

As discussed above, Code § 524(e) and applicable precedent do not allow the court to protect third parties from liability for debts on which they are liable with a debtor. The protection for claims arising through their conduct during a case that a bankruptcy court may grant third parties, other than committees, members of the committees, and committees' professionals, has also been limited by the Fifth Circuit's decision in *Pacific Lumber. See Pacific Lumber*, 584 F.3d at 253. The court must evaluate the exculpatory relief proposed in the Plan accordingly.

The plan in *Pacific Lumber* provided numerous third parties with protection from liability for their negligent conduct during the course of the chapter 11 case including liability related to proposing, implementing, and administering the plan. The third-party protections in *Pacific Lumber* applied to the debtors' officers and directors as well as the companies that proposed the plan and that ultimately acquired majority ownership of the reorganized debtors. Although a third-party exculpation provision arguably might be defended as justified by the bankruptcy court's equitable powers given by Code § 105, Chief Judge of the Fifth Circuit Court of Appeals Edith Jones struck the exculpatory provisions because the Court saw "little equitable about protecting the released non-debtors from negligence suits arising out of the reorganization." *Id*. at 252.

Explaining further, Chief Judge Jones wrote:

> "[T]he essential function of the exculpation clause proposed here is to absolve the released parties from any negligent conduct that occurred during the course of the bankruptcy. The fresh start *§ 524(e)* [of the Code] provides to debtors is not intended to serve this purpose."

*Id*. at 253 (emphasis in original).

Debtors and the Equity Committee argue that the ruling in *Pacific Lumber* is limited to the facts of that case. The court disagrees. Chief Judge Jones wrote that "non-debtor releases are most appropriate as a method to channel mass claims toward a specific pool of assets." *Id*. at 252. Chief Judge Jones also cited to several prior Fifth Circuit decisions (*In re Coho Resources, Inc.*, 345 F.3d 338, 342 (5th Cir. 2003); *Hall v. National Gypsum Co.*, 105 F.3d 225, 229 (5th Cir. 1997); *Matter of Edgeworth*, 993 F.2d 51, 53-54 (5th Cir. 1993); and *Zale Corporation v. Feld*, 62 F.3d 746 (5th Cir. 1995)) stating that, "these cases seem broadly to foreclose non-consensual non-debtor releases and permanent injunctions." *Id*. These statements persuade the court that the ruling in *Pacific Lumber* is not limited to its facts. Indeed, there is nothing in the *Pacific Lumber* opinion which, in the court's view, can reasonably be read to limit its ruling to the facts of that case.

Because *Pacific Lumber* is binding precedent, the court may not, over objection, approve through confirmation of the Plan third-party protections, other than those provided to the Committees, members of the Committees, and the Committees' Professionals. However, although *Pacific Lumber* requires the court to disapprove the third-party protections in the Plan, it does not prevent the court from retaining jurisdiction over at least some suits against third parties which would have been covered by the Plan's third-party protections.

Debtors, serving through their management and professionals as debtors in possession, acted in the capacity of trustees for the benefit of their creditors. *See, e.g., Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery (In re Cybergenics Corp.)*, 226 F.3d 237, 243 (3d Cir. 2000); *In re Marvel Entertainment*

*Group*, 140 F.3d 463 (3d Cir. 1998); *In re J.T.R. Corp.*, 958 F.2d 602 (4th Cir. 1992); *Petit v. New England Mortgage Servs.*, 182 B.R. 64, 69 (D. Me. 1995). In that capacity, Debtors operated their business pursuant to Code § 1108. To the extent Debtors acted in the Chapter 11 Cases, other than in bad faith, pursuant to the authority granted by the Code or as directed by court order, Debtors' management and professionals presumptively should not be subject to liability. In order to ensure that such persons are not improperly pursued, it is appropriate that this court should channel to itself claims that may be asserted against Debtors' management (including their boards of directors and Chief Restructuring Officer) and professionals based upon their conduct in pursuit of their responsibilities during the Chapter 11 Cases. [14]

---

[14] It is well established that bankruptcy trustees are entitled to broad immunity for actions they take that are within the scope of their authority and that are taken pursuant to a court order. *See, e.g.*, *Harris v. Wittman (In re Harris)*, 2009 U.S. App. LEXIS 28177 (9th Cir. Dec. 21, 2009); *Boullion v. McClanahan*, 639 F.2d 213 (5th Cir. 1981); 3 COLLIER ON BANKRUPTCY ¶ 323.0.(3)(a) (15th ed. rev. 2009). The immunity provided to bankruptcy trustees has also been found to extend to their professionals. *See Harris*, 2009 U.S. App. LEXIS 28177.

In the instant case a trustee was not appointed. Instead Debtors acted as representative of their estates and stood in a trustee's shoes pursuant to Code § 1107. Under Code § 1107(a), "a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter."

While the court has found no case in which a debtor in possession was found to have the immunity accorded a trustee, neither has the court found authority going the other way. *Coho Resources*, *Edgeworth*, and *Hall* all involved attempts by third parties to assert that the discharge granted to debtors barred creditors from collecting pre-petition debts from co-liable third parties, while *Zale* was a case in which the debtors attempted to release third parties from prepetition obligations to creditors as a condition of a settlement agreement.

Protecting the members of management of a debtor in possession and the professionals advising them for good-faith actions taken under the authority of the Code or pursuant to orders of the court, on the other hand, would seem consistent with the case law that equates a debtor in possession to a trustee. The court reads *Pacific Lumber* to prohibit exculpatory language that would bar such actions outright, but it does not understand that the Court of Appeals meant to prevent bankruptcy courts from retaining jurisdiction as the exclusive forum for deciding cases raising issues pertaining to the performance by a debtor in possession of its duties under sections 1107 and 1106 of the Code.

### III. Conclusion

After reviewing the Plan and relevant precedent the court has concluded that the relief sought in Articles VIII and X of the Plan must be modified as follows. It is therefore;

1. **ORDERED** that this memorandum opinion and order supersedes and replaces Paragraphs 8.6, 10.4, 10.7 and 10.8 of the Plan and, notwithstanding any provision of the Plan or Confirmation Order, constitutes the entirety of the protections which shall be granted to parties other than Debtors and Reorganized Debtors in these Chapter 11 Cases; it is further

2. **ORDERED** that all of Article VIII of the Plan, with the exception of Paragraph 8.6, and all of Article X of the Plan, with the exception of Paragraphs 10.4, 10.7, and 10.8, shall be governed by the Confirmation Order and, to the extent therein provided, shall remain effective and binding; it is further

3. **ORDERED** that this court shall retain exclusive jurisdiction over any suit brought on any claim or cause of action related to the Chapter 11 Cases that exists as of the Effective Date against a Committee; any member of a Committee; any Committee's Professionals; Debtors; Reorganized Debtors; or any Protected Person for conduct pertaining to Debtors during the Chapter 11 Cases, and that any entity wishing to bring such suit shall do so in this court; it is further

4. **ORDERED** that nothing herein shall limit or affect the protections provided Debtors and Reorganized Debtors by the Confirmation Order or Code §§ 524 and 1141; it is further

5. **ORDERED** that the Committees, members of the Committees, and the Committees' Professionals, except as specified in this decretal paragraph, shall be exculpated as to and shall have no liability by reason of any and all claims and causes of action existing as of the Effective Date for any conduct of any of the Committees, the members of the Committees, or the Committees' Professionals acting in such capacity during the Chapter 11 Cases; the forgoing shall not operate as a waiver or release from any claim or cause of action arising out of willful misconduct, gross negligence, fraud, criminal conduct, intentional unauthorized misuse of confidential information that causes damages, or *ultra vires* acts; it is further

6. **ORDERED** that the liability of any Protected Person other than the Committees, the members of the Committees, the Committees' Professionals, Debtors, and Reorganized Debtors shall not be affected by the Plan or Confirmation Order except as specifically provided in the decretal paragraphs of this memorandum opinion and order; it is further

7. **ORDERED** that should a suit be brought in another court against (a) a party indemnified by Debtors pursuant to Paragraph 8.6 of the Plan or (b) a Protected Person for any claim or cause of action that is subject to decretal paragraph 3 above, nothing herein shall limit the ability of Debtors or such indemnified party, pursuant to 28 U.S.C. § 1452, to remove such suit to the proper federal court and seek its transfer to this court, or to seek such other relief as may be appropriate from this or another court; it is further

8. **ORDERED** that this memorandum opinion and order shall not affect prior orders of this court or the United States District Court for the Northern District of Texas providing for the exercise of jurisdiction by a court other than this court over matters subject to this court's jurisdiction or the jurisdiction of the United States District Court for the Northern District of Texas in the Chapter 11 Cases, including, *inter alia*, orders lifting the stay to permit pursuit of causes of action in other courts and orders transferring litigation to other courts; and no provision of this memorandum opinion and order (including decretal paragraphs 3 and 7 above) shall constitute a basis for limiting or divesting the jurisdiction and authority of any such court, including through removal pursuant to 28 U.S.C. § 1452, over any action therein which action is proceeding in accordance with a prior order of this court or the United States District Court for the Northern District of Texas; it is further

9. **ORDERED** that nothing in Paragraph 8.6 of the Plan shall prevent any creditor or other potential plaintiff from bringing suit against any party indemnified by Debtors or Reorganized Debtors and from making a recovery beyond that available from insurance proceeds for such indemnified party; provided, however, that this decretal paragraph shall not affect any obligation by Debtors to indemnify such party; and provided, further, this decretal paragraph does not affect the ability of Debtors or an indemnified party to seek relief as described in decretal paragraph 7 above.

### END OF MEMORANDUM OPINION AND ORDER ###