U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

United States Bankruptcy Judge

Signed February 08, 2011

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| PILGRIM'S PRIDE CORPORATION, *et. al.*, | § § § | Case No. 08-45664 (DML) |
| Debtors. | § § | JOINTLY ADMINISTERED |

### Findings of Fact and Conclusions of Law

The court exercises its core jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(B). The following are the court's findings of fact and conclusions of law. To the extent that a finding of fact in whole or in part constitutes a conclusion of law it should be considered as such. To the extent that a conclusion of law in whole or in part constitutes a finding of fact it should be considered as such.

A. <u>Findings of Fact</u>

1. On December 1, 2008 (the "Commencement Date"), Pilgrim's Pride Corporation ("PPC") and its affiliated debtors in the above-referenced chapter 11 cases (collectively, as reorganized, "Debtors") each commenced a voluntary case in this court under chapter 11 of title

11 of the United States Code. Debtors' chapter 11 cases have been consolidated for procedural purposes and are being jointly administered as Case No. 08-45664 pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

2. On August 3, 2009, Raymond Love ("Raymond," and, collectively with his wife Sheila Love ("Sheila"), the "Loves") was injured in a fall (the "Accident"). Raymond was employed by PPC at the time of the Accident.

3. On November 16, 2009, Raymond filed an arbitration demand (the "Arbitration Demand") with the American Arbitration Association ("AAA") against PPC regarding injuries allegedly sustained as a result of the Accident. Arbitration proceedings are currently pending pursuant to the Arbitration Demand as AAA Case No. 71 160 00828 09 (the "Arbitration Proceeding"). Raymond filed nothing with this court at that time.

4. On December 8, 2009, the court held a confirmation hearing on *Debtors' Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code (As Modified)* (the "Plan"). On December 10, 2009 (the "Confirmation Date"), the court entered an order confirming the Plan pursuant to 11 U.S.C. § 1129. The Plan became effective on December 28, 2009.

5. On January 22, 2010, the Loves filed a complaint in Texas state court against SF Trucking, L.L.C. and Minoflar Sunjic. The injuries allegedly sustained by Raymond as a result of the Accident formed the basis of the complaint. The Loves filed nothing with this court at that time.

6. PPC sent Raymond the following notices via First Class U.S. Mail: (1) on or before April 15, 2009, the Notice of Deadlines for Filing Proofs of Claim, and a proof of claim form (collectively, the "Bar Date Notice"); (2) on or before October 29, 2009, the Notice of Non-

Voting Status, the Confirmation Hearing Notice, and the Notice from Official Committee of Unsecured Creditors to Holders of Class 7 General Unsecured Claims Regarding Contract Rate Post-Petition Interest (collectively, the "Confirmation Hearing Notice"); and (3) on or before December 30, 2009, the Notice of (A) Entry of an Order Confirming the Debtors' Joint Amended Plan of Reorganization under Chapter 11 of the Bankruptcy Code (As Modified) and (B) Occurrence of the Effective date (the "Administrative Bar Date Notice," and, collectively with the Bar Date Notice and the Confirmation Hearing Notice, the "Notices"). The Administrative Bar Date Notice stated that administrative expense claims had to be filed by February 26, 2010 (the "Administrative Bar Date").

7. On May 27, 2010, the Loves filed a Statement of Claims in the Arbitration Proceeding which included derivative claims filed by Sheila. The Loves did not file anything with this court at that time.

8. On September 13, 2010, PPC filed a Suggestion of Bankruptcy and Motion to Dismiss (the "Motion to Dismiss") in the Arbitration Proceeding. The Motion to Dismiss requested that the Loves' claims be dismissed with prejudice because of the Loves' failure to file an administrative expense claim with this court by the Administrative Bar Date. The Motion to Dismiss also asked that the Arbitration Proceeding be abated until this court ordered it to proceed.

9. Upon receipt of the Motion to Dismiss, Mr. Eric Marye ("Marye"), counsel to the Loves in the Arbitration Proceeding and a personal injury attorney, consulted bankruptcy counsel. Marye realized for the first time that Raymond should have filed an administrative expense claim by the Administrative Bar Date. On October 18, 2010, Marye filed with this court the *Motion of Raymond Love and Sheila Love to (I) Allow Late Filed Administrative Claim and*

*(II) Order Arbitration to Proceed* (the "Motion to Extend"). On October 26, 2010, Marye filed the *First Amended Motion of Raymond Love and Sheila Love to (I) Allow Late Filed Administrative Claim [and] (II) Order for Arbitration to Proceed* (the " Amended Motion to Extend"). Marye then filed the Application of Raymon[sic] Love and Sheila Love for Allowance of Administrative Expense Claim (the "Application") with this court on November 18, 2010. The Amended Motion to Extend asks that the Application be deemed timely filed and that the Arbitration Proceeding continue. The Application asks the court to allow Raymond's administrative expense claim in an amount to be determined in the Arbitration Proceeding. The Application also asks the court to order PPC to pay Raymond's administrative expense claim within ten days of the arbitrator's decision becoming final.

10. The court held a hearing (the "Hearing") on the Application on December 21, 2010. During the Hearing, the Loves provided testimony that Sheila always handles Raymond's mail. Both Debtors and the Loves also provided the court with a considerable amount of expert testimony on the subject of whether Raymond suffers from dementia as a result of the Accident.

B. <u>Conclusions of Law</u>

1. The Accident occurred after the Commencement Date but before the Confirmation Date. Raymond's claim is therefore an administrative expense claim, and, if allowed, may be paid pursuant to 11 U.S.C. § 503.

2. Rule 3003(c)(3) of the Federal Rules of Bankruptcy Procedure provides that "[t]he court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed" in a chapter 11 proceeding. Though Rule 3003(c)(3) does not apply to administrative expense claims, the analysis the court uses to determine whether to extend the

time within which an administrative expense claim may be filed is identical to the inquiry the court undertakes under applicable precedent to determine whether to allow a late-filed proof of a prepetition claim. Rule 9006(b)(1) further provides that "when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion . . . on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect."

3.   The U.S. Supreme Court has instructed that, to determine whether sufficient cause exists to allow a late-filed proof of claim, a court must look to Rule 9006(b)(1)'s "excusable neglect" standard. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. L.P.*, 507 U.S. 380, 389 (1993). *Pioneer* makes clear that excusable neglect is a "somewhat 'elastic concept,'" so when considering whether to allow a party to file a late proof of claim, "the determination is at bottom an equitable one." *Id.* at 392 (citing 4A C. WRIGHT & A. MILLER, *Federal Practice and Procedure* § 1165 (2d ed. 1987)). *Pioneer* provided a non-exclusive list of four factors to use in assessing whether a failure to timely file a claim resulted from excusable neglect: (1) "the reason for the delay, including whether it was within the reasonable control of the movant," (2) "whether the movant acted in good faith," (3) "the danger of prejudice to the debtor," and (4) "the length of the delay and its potential impact on judicial proceedings." *Id.* at 395. The Court of Appeals for the Fifth Circuit has limited its excusable neglect inquiries to the enumerated factors. *See, e.g., In re Eagle Bus Mfg., Inc.*, 62 F.3d 730, 737 (5th Cir. 1995).

4.   First, the court considers "the reason for the delay, including whether it was within the reasonable control of the movant." *Pioneer*, 507 U.S. at 395. Even if the circumstances surrounding the delay were in the control of the moving creditor, a court may still

find excusable neglect. *Id.* at 388. Here, Raymond provided evidence that Sheila handles his mail. The record contains no evidence that Sheila informed Raymond of the Notices, assuming Sheila received them at all. Raymond and Sheila have no experience with, or training in bankruptcy or the law. Thus, even if Sheila did receive the Notices and informed Raymond of them—and the record contains no evidence that she did—their relative lack of sophistication, as well as the conclusion that notice does not obviate excusable neglect, counsel against weighing this factor heavily against Raymond.[1]

5. Second, the court considers "whether the movant acted in good faith." *Pioneer*, 507 U.S. at 395. The court finds no indication Raymond acted in bad faith in filing a late administrative claim, particularly given Debtors' failure to file the Motion to Dismiss until approximately seven months after the Administrative Bar Date. Prior to receiving the Motion to Dismiss, Marye, a personal injury attorney, was unaware of the necessity of filing a claim by the Administrative Bar Date. Upon receipt of the Motion to Dismiss, Marye immediately consulted bankruptcy counsel. He filed the Motion to Extend approximately five weeks after receiving the Motion to Dismiss, the Amended Motion to Extend one week later, and the Application approximately three weeks after that. The court does not view Raymond as a sophisticated creditor, and believes he relied heavily on Marye for legal advice. Raymond had nothing to gain, and his whole claim to risk, by delaying filing his administrative claim until after the Administrative Bar Date. Therefore, the court concludes that Raymond acted in good faith in filing out of time.

---

[1] Much of the testimony at the Hearing concerned whether Raymond suffers from dementia as a result of the Accident. Though Raymond's mental abilities might normally be a factor to consider in determining whether his failure to timely file an administrative claim was the result of excusable neglect, determining whether Raymond suffers from dementia as a result of the Accident arguably would invade the province of the District Court. *See* 28 U.S.C. § 157(b)(5). The record contains sufficient evidence for the court to determine whether Raymond's failure to timely file an administrative claim was the result of excusable

6. Third, the court considers "the danger of prejudice to the debtor[s]." *Id*. The Fifth Circuit has emphasized the importance of this factor in the determination of excusable neglect. *See Eagle Bus*, 62 F.3d at 737. The key consideration in evaluating the danger of prejudice to Debtors is whether allowing the late filing of a claim will have a material adverse effect on their reorganization. *See In re Sacred Heart Hosp. of Norristown*, 186 B.R. 891, 895, 897 (Bankr. E.D. Pa. 1995); *In re Earth Rock, Inc.*, 153 B.R. 61, 63-64 (Bankr. D. Idaho 1993). Here, Debtors exited bankruptcy with assets worth between two and three billion dollars. Debtors have paid their creditors 100% of the amounts of their allowed claims plus interest. Should Raymond's claim be permitted to proceed through arbitration, the amount of his judgment would be insignificant compared to the value of Debtors' assets. Allowing Raymond to file a late administrative claim would not have a material adverse effect on Debtors' reorganization. The court finds no danger of prejudice to Debtors.

7. Fourth, the court considers "the length of the delay and its potential impact on judicial proceedings." *Pioneer*, 507 U.S. at 395. Courts have held that a delay of as long as two years between the bar date and the filing of a proof of claim may be excused, so long as the delay does not have a significant impact on judicial proceedings. *See In re Dix*, 95 B.R. 134, 138 (B.A.P. 9th Cir. 1988); *In re Beltrami Enters., Inc.*, 178 B.R. 389, 392 (Bankr. M.D. Pa. 1994). The delay in this case of approximately nine months is thus not sufficient in itself to preclude a finding of excusable neglect. The critical consideration regarding this fourth factor is not the elapsed time of the delay, however, but rather the effect of that delay on the judicial administration of the case. *See Earth Rock*, 153 B.R. at 64. Here, Debtors provided evidence that they mailed notice of the Administrative Bar Date to Raymond. It is thus logical to assume

---

neglect without also determining whether Raymond suffers from dementia as a result of the Accident. The court therefore declines to consider the latter issue.

Debtors anticipated Raymond filing an administrative claim. This case parallels *Earth Rock*, in which the debtor anticipated the creditor's filing of a proof of claim and the court found no adverse effect on the debtor's reorganization efforts or the efficient judicial administration of the case. *See id.* at 63-64. In the instant case, the court can see no adverse effect on Debtors' reorganization, or the court's ability to effectively oversee the bankruptcy, due to Raymond's filing a late administrative claim. Were the court to find an adverse effect, moreover, it would not be fair to penalize Raymond for his delay in filing the Application when Debtors waited seven months after the Administrative Bar Date to file the Motion to Dismiss.

8. These findings of fact and conclusions of law do not limit Debtors' ability to assert any applicable legal defenses to Raymond's claim.

Based on the foregoing, the court concludes that Raymond's failure to timely file an administrative claim was the result of excusable neglect. Pursuant to its authority under Rule 9006(b)(1), the court grants the Application without prejudice to assertion by Debtors of any applicable legal defenses. Pursuant to the Order Respecting Reference signed on April 28, 2010, by U.S. District Judge Terry R. Means, Raymond is directed to pursue his administrative expense claim in the U.S. District Court for the Northern District of Texas, where a U.S. District Judge will determine if the Arbitration Proceeding is the proper means by which Raymond's administrative expense claim should be resolved.

# # # # END OF FINDINGS OF FACT AND CONCLUSIONS OF LAW # # # #