

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**United States Bankruptcy Judge**

**Signed May 03, 2011**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CHAPTER 11 |
| PILGRIM'S PRIDE CORPORATION, *et. al.*, | § | |
| | § | CASE NO. 08-45664 (DML) |
| | § | |
| DEBTORS. | § | JOINTLY ADMINISTERED |
| | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court is the *Reorganized Debtors' Motion for Summary Judgment on All Future Damages Claims because such Claims are Barred by Settlement and Release, Accord and Satisfaction, Judicial Estoppel, and Equitable Estoppel, and Do Not Qualify for Administrative Expense Priority* (the "Motion"), filed by Pilgrim's Pride Corporation ("PPC"), PFS Distribution Company, PPC Transportation Company, To-Ricos, Ltd., To-Ricos Distribution, Ltd., Pilgrim's Pride Corporation of West Virginia, Inc., and PPC Marketing, Ltd. (collectively, "Debtors"). The court held a hearing on the Motion on

1

March 9, 2011, at which counsel for Debtors and certain Growers[1] presented oral argument. The court has also considered, in addition to the Motion, the *Response to Reorganized Debtors' Motion for Summary Judgment on All Future Damages Claims and Administrative Expense Priority* (the "Growers' Response"), the *Reorganized Debtors' Reply in Support of Motion for Summary Judgment on All Future Damages Claims because such Claims are Barred by Settlement and Release, Accord and Satisfaction, Judicial, Estoppel, Equitable Estoppel and Do Not Qualify for Administrative Expense Priority* (the "Reply to Growers' Response"), and accompanying briefs and exhibits.[2]

The Objections are subject to the court's core jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(B). This memorandum opinion and order constitutes the court's findings of fact and conclusions of law. FED. R. BANKR. P. 9014 and 7052.

I. **BACKGROUND**

Debtors are large chicken integrators with operations in the United States, Puerto Rico, and Mexico. Debtors each commenced a voluntary chapter 11 case in this court on December 1, 2008 (the "Commencement Date"). The court consolidated these chapter 11 cases for joint administration pursuant to Rule 1015(b) of the FEDERAL RULES OF BANKRUPTCY PROCEDURE.

---

[1] The "Growers" are certain chicken growers formerly under contract with Debtors for PPC's complexes in Douglas, Georgia (the "Douglas Growers"), El Dorado, Arkansas (the "El Dorado Growers"), Enterprise, Alabama (the "Enterprise Growers"), and Siler City, North Carolina (the "Siler City Growers"). After PPC announced on March 12, 2008 that it was closing the Siler City complex, each of the Siler City Growers began raising poultry for one of two complexes located in Marshville, North Carolina and Sanford, North Carolina.

[2] To the extent necessary, exhibits will be identified as "DX" for Debtors' exhibits and "GX" for the Growers' exhibits.

On April 1, 2009, the court entered the *Order Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* (the "Bar Date Order"). Each of the Growers filed a proof of claim in accordance with the Bar Date Order (collectively, the "Proofs of Claim"). By their respective Proofs of Claim, the Douglas Growers, the El Dorado Growers, and the Enterprise Growers requested reimbursement for itemized prepetition expenses[3] allegedly incurred as a result of Debtors' misconduct.[4] The Siler City Growers, however, sought damages for lost income and the destruction of the economic value of their investments, in addition to reimbursement of the costs of capital investments and improvements sought by the other growers.[5] *See* DX C.1, app. 132.

On July 10, 2009, Debtors filed motions by which they sought authority to reject their contracts with the Growers (the "Rejection Motions").[6] The Growers filed objections to the Rejection Motions, challenging both Debtors' authority to reject their growing contracts and the proposed effective dates for the rejections. Counsel for the

---

[3] These prepetition expenses include costs incurred through modifications to poultry houses and costs for equipment associated with their chicken growing operations. *See, e.g.*, DX D.1, app. 393.

[4] The Douglas Growers assert causes of action for fraud, fraudulent inducement, violations of the Packers and Stockyards Act (the "PSA"), breach of fiduciary duty, and promissory estoppel. *See, e.g.*, DX D.1, app. 393. The El Dorado Growers assert causes of action for fraud, violations of the PSA, violations of the Arkansas Deceptive Trade Practices Act, breach of fiduciary duty, promissory estoppel, and restitution. *See, e.g.*, DX E.1, app. 475. The Enterprise Growers assert claims for fraud, violations of the PSA, breach of fiduciary duty, restitution, promissory estoppel, and equitable estoppel. *See, e.g.*, DX F.1, app. 582.

[5] The Siler City Growers assert causes of action for fraud, violations of the PSA, violations of the North Carolina Unfair and Deceptive Trade Practices Act, breach of fiduciary duty, promissory estoppel, and equitable estoppel. *See, e.g.*, DX C.1, app. 132-133.

[6] Some of the Growers had, in fact, seen their contracts terminated prepetition, *see, e.g.*, DX C.1, app. 131, in accordance with a provision in the contracts allowing PPC to terminate growing contracts for "economic necessity." The court understands that, for sake of thoroughness, these growers' contracts were included in the Rejection Motions.

Debtors and the Growers' counsel subsequently entered into a stipulation and agreement (the "Release Agreement"), which the court approved by order on October 27, 2009. Paragraph 4 of the Release Agreement provides:

> The Growers, on behalf of, and including their respective attorneys, heirs, spouses, assigns, successors, executors, trustees, and administrators, (collectively, the "Releasing Parties") hereby RELEASE, ACQUIT, AND DISCHARGE Debtors and their respective current and former direct and indirect parents, direct and indirect subsidiaries, affiliates and related corporations, firms, associations, partnerships, insurers, and entities (collectively referred to as the "PPC Parties"), their successors and assigns, and the current and former owners, shareholders, directors, officers, employees, agents, attorneys, representatives, and insurers of the PPC Parties and their guardians, successors, assigns, heirs, executors, and administrators (hereinafter collectively referred to as the "PPC Releasees", and individually as a "Releasee") from and against any and all claims, complaints, grievances, liabilities, obligations, promises, agreements, damages, causes of action, rights, debts, demands, controversies, costs, losses, and expenses (including attorneys' fees and expenses) whatsoever, under any municipal, local, state, or federal law, common or statutory, including, but in no way limited to, (i) all claims as defined by section 101(5) of the Bankruptcy Code except those hereinafter reserved; (ii) all claims for discrimination, other than claims for discrimination under the Packers and Stockyards Act, 7 U.S.C. § 181 *et seq.*, (the "PSA"); (iii) all claims for intentional or negligent infliction of emotional distress; (iv) all claims for violations of the Georgia and Alabama Deceptive Trade Practices Acts and all other similar state statutes, other than those hereinafter reserved; (v) all out-time claims; *(vi) all breach of contract claims, including all claims for contract rejection damages;* and (vii) all promissory estoppel claims (collectively, the "PPC Released Claim(s)"); *provided, however, that . . . all claims for (i) violations of the PSA; (ii) common law fraud, deceit, misrepresentation, constructive fraud, and fraud in the inducement; (iii) breach of fiduciary duty; (iv) violations of the Arkansas and North Carolina Deceptive Trade Practices Acts; and (v) equitable estoppel shall not be deemed or construed to be PPC Released Claims. . . .* To the extent permitted by law, the Releasing Parties forever waive, release, and covenant not to sue or file or assist with suing or filing any complaint or claim against any Releasee with any court, government agency, or other entity based on a PPC Released

4

> Claim, whether known or unknown at the time of execution of this Agreement. . . .

DX A.1, app. 004-005 (italics added).

In exchange for the Growers executing the Release Agreement, Debtors agreed to pay the Growers an aggregate consideration of $2,450,000, which Debtors tendered shortly after obtaining court approval of the settlement. Subsequent to the entry of the order approving the Release Agreement and the payment of the $2,450,000, the El Dorado Growers, the Douglas Growers, and the Enterprise Growers filed administrative expense claims (the "Administrative Expense Claims") seeking damages for, among other things, lost income and the destruction of the economic value of their investments ("Future Damages").[7] *See* DX B.1-B.3, app. 019-125. The Siler City Growers did not file administrative expense claims, having already requested Future Damages in their proofs of claim. *See, e.g.*, DX C.1, app. 132.

## II. DISCUSSION

In the Motion, Debtors assert that the court should grant summary judgment with respect to the Growers' claims for Future Damages "because [such claims] are barred by the doctrines of settlement and release, accord and satisfaction, judicial estoppel, equitable estoppel, and because they do not qualify for administrative expense priority." Motion at 2. Because the court agrees with Debtors that the Release Agreement, coupled with PPC's tender of $2,450,000, bars the Growers' claims for Future Damages, the court need not consider PPC's other arguments.

---

[7] In support of their claims for Future Damages, the Douglas Growers allege violations of the PSA, fraud, breach of fiduciary duty, and negligent misrepresentation. *See* DX B.1, app. 015-045. The El Dorado Growers allege violations of the PSA, fraud, violations of the Arkansas Deceptive Trade Practices Act, and breach of fiduciary duty. *See* DX B.2, app. 086-101. The Enterprise Growers allege violations of the PSA, fraud, breach of fiduciary duty, and equitable estoppel. *See* DX B.3, app. 115-123.

The effect of the court's order approving the Release Agreement was the rejection of any of the Growers' contracts which had not been previously terminated. Rejection of a contract under 11 U.S.C. § 365 provides the non-debtor party with a prepetition claim for breach of contract damages. *See In re El Paso Refinery, L.P.*, 220 B.R. 37, 40 (Bankr. W.D. Tex. 1998) ("[T]he act of rejection is deemed to equal a breach of the contract occurring the day prior to the filing of the bankruptcy petition, and the non-debtor is given a pre-petition claim for damages arising from such a breach, measured (in the usual case) by the terms of the contract and applicable state (or federal) law."); *see also* 11 U.S.C. § 502(g). As set forth above, the Release Agreement provides that, in exchange for Debtors' tender of the $2,450,000 payment, the Growers agree to release Debtors from any and all liability for "all breach of contract claims, including all claims for contract rejection damages." DX A.1, app. 004-005. Thus, to the extent the Growers claims for Future Damages run to the rejection of their growing contracts (or to any breach of contract which occurred prepetition), such claims were satisfied by the Release Agreement and may no longer be maintained.

As Debtors note, the key question presented to the court is "whether the Future Damages . . . now claimed by the Growers are simply the already-released, breach-of-contract damages under a different name." Brief to Motion at 13. Neither party disputes that lost profits are a measure of damages for breach of contract under Arkansas, Alabama, Georgia, and North Carolina law.[8] The Growers instead argue that "under the law applicable to the claims reserved and asserted by [the] Growers, damages . . . can and do include loss of income and destruction of the economic value of their investments."

---

[8] The laws of Arkansas, Alabama, Georgia, and North Carolina govern the extent of the Growers' remedies. *See* Brief to Motion at 14 n.9.

6

Brief to the Growers' Response at 7. The Growers thus admit they are barred by the Release Agreement from collecting Future Damages based on any prepetition breach of, or Debtors' rejection of, their contracts. To the extent Future Damages are an allowable form of compensation with respect to the claims excepted from the Release Agreement, however, the Growers argue that such damages should be allowed.

The problem with the Growers' argument is that an award of Future Damages in connection with the Growers' excepted claims would result in double recovery. Lost profits are typically recoverable for breach of a contract "where the business has been established, has made profits and there are definite, certain and reasonable data for their ascertainment, and such profits were in the contemplation of the parties at the time of the contract . . . ." *KAR Printing, Inc. v. Pierce*, 623 S.E.2d 704, 705 (Ga. Ct. App. 2005); *see also Keith v. Day*, 343 S.E.2d 562, 568 (N.C. Ct. App. 1986); *Gadwall Prods., Inc. v. Fletcher*, No. CA 06-1265, 2007 WL 1556089, at *6 (Ark. Ct. App. May 30, 2007); *Int'l Paper Co. v. Madison Oslin, Inc.*, 985 So. 2d 879, 886-87 (Ala. 2007). Damages for a breach of contract claim "are intended to place an injured party, as nearly as possible, in the same position they [sic] would have been if the injury had never occurred." *John Thormond & Assocs. v. Kennedy*, 668 S.E.2d 666, 668 (Ga. 2008); *see also Goolesby v. Koch Farms, LLC*, 955 So. 2d 422, 427 (Ala. 2006); *First United Bank v. Phase II, Edgewater Addition Residential Prop. Owners Improvements Dist. No. 1 of Maumelle*, 69 S.W.3d 33, 46 (Ark. 2002); *Lee Cycle Center, Inc. v. Wilson Cycle Center, Inc.*, 545 S.E.2d 745, 750 (N.C. Ct. App. 2001). This is really another way of saying that the non-breaching party is entitled to expectation damages – that is, the benefit of its bargain. *See, e.g., Cajun Forge Co. v. Anvil Int'l, Inc. (In re Cajun Forge Co.)*, No. 04-5074, 2008

WL 5144536, at *13 (Bankr. W.D. La. 2008) ("A fundamental tenet of contract law . . . is that a non-breaching party is entitled to damages that restore to the non-breaching party 'the benefit of [its] bargain'—i.e. expectation damages." (quoting *Duncan v. Theratx, Inc.*, 775 A.2d 1019, 1022 n.6 (Del. 2001))).

The Release Agreement, by its plain language, provides that any claims for contract rejection damages (and any claims based on prepetition breaches of contract) the Growers may have had against Debtors were released. *See* DX A.1, app. 004-005. This release took effect upon entry by the court of the order approving the Release Agreement and payment to the Growers by Debtors of the $2,450,000 consideration. By becoming parties to the Release Agreement, the Growers agreed to accept $2,450,000 as expectation damages. To the extent lost profits (i.e., Future Damages) were required to provide the Growers' with the benefit of their bargain with Debtors, such Future Damages were necessarily included within the $2,450,000 consideration paid to the Growers, and the Growers were barred from further seeking such damages. *See Schmaltz v. Walder*, 566 S.W.2d 81, 83 (Tex. Civ. App.—Corpus Christi 1978, writ ref'd n.r.e.) ("A settlement agreement and release . . . is a complete bar to any later action based on matters included in the settlement agreement and covered by the release.").[9]

As noted above, the Growers stake their claim to Future Damages on the proposition that, since the claims excepted from the Release Agreement are for causes of action other than breach of contract/contract rejection damages, the Growers may recover Future Damages to the extent applicable law allows such damages to be collected under the excepted causes of action. To this end, the Growers point out that "[t]he proper

---

[9] The Release Agreement states that it is governed by, and shall be construed in accordance with, Texas law. *See* DX A.1, app. 009.

8

measure of damages for fraud is expectation damages including the benefit of the bargain."[10] Brief to the Growers' Response at 6. While this is often (though not always) the case, the Growers already received the benefit of their bargain with Debtors upon payment of the $2,450,000 consideration. The Growers cite no case (and the court has found none) stating that, once a party has been made whole as a result of payment of expectation damages for a breach of contract claim, that party is entitled to receive the benefit of its bargain a second time by pursuing expectation damages via a fraud suit based on the same conduct giving rise to the breach of contract claim. The case law found by the court is, not surprisingly, opposite to the Growers' position. *See, e.g.*, *Becherer v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 43 F.3d 1054, 1063-64 (6th Cir. 1995) (upholding dismissal by U.S. District Court of plaintiffs' fraud claims on the grounds that allowing plaintiffs to pursue such claims after having already been awarded breach of contract damages for the same conduct would result in double recovery).

Nor are the Growers' arguments regarding the other bases for their claims (e.g., under the North Carolina Unfair or Deceptive Trade Practices Act and the Arkansas Deceptive Trade Practices Act, or for breach of fiduciary duty) any more persuasive.[11] As the Growers themselves note, *see* Brief to the Growers' Response at 7, these claims entitle a party to "actual damages" – that is, compensation rectifying injury sustained as a

---

[10] The Growers cite several cases in support of this statement, including *Interstate Freeway Servs., Inc. v. Houser*, 835 S.W.2d 872, 875 (Ark. 1992); *Mason and Dixon Lines, Inc. v. Byrd*, 601 So. 2d 68, 70-73 (Ala. 1992); *R.T. Patterson Funeral Home, Inc. v. Head*, 451 S.E.2d 812, 818 (Ga. Ct. App. 1994); *Shaver v. N.C. Monroe Constr. Co.*, 306 S.E.2d 519, 526 (N.C. App. 1983).

[11] With respect to the Growers' PSA claims, on January 19, 2011, the court held a hearing on a motion for summary judgment submitted by Debtors with respect to these claims. Several days later, the court issued a letter ruling in which the court granted in part and denied in part the motion for summary judgment. After two days of trial held on February 14 and 15, 2011, the court granted judgment for Debtors with respect to the PSA claims that survived summary judgment. Accordingly, the court need not consider whether the Growers are entitled to Future Damages in connection with their PSA claims.

9

result of Debtors' actions. *See, e.g.*, *Sites v. Nationstar Mortgage LLC*, 646 F. Supp. 2d 699, 713 (M.D. Pa. 2009) ("'Damages' is a word of art meaning something paid in recompense for infringement of plaintiff's legal right by defendant's liability–creating conduct.") (internal quotations omitted); *Eleopulos v. McFarland and Hullinger, LLC*, 145 P.3d 1157, 1159 (Utah Ct. App. 2006) ("'Damages' is commonly defined as the estimated money equivalent for detriment or injury sustained.") (internal quotations omitted). To the extent the Growers required Future Damages to be made whole, the Growers either received such damages through the $2,450,000 paid by Debtors, or contracted away the right to be made whole by executing the Release Agreement and accepting the consideration provided. To grant the Growers an opportunity to be compensated twice-over would therefore provide them with the possibility of achieving double recovery.[12] The Motion must therefore be granted.

The Growers' argument further is inconsistent with bankruptcy policy. Had the Growers not executed the Release Agreement, they likely would have been allowed claims for the rejection of their contracts pursuant to 11 U.S.C. § 502(g). Having received payment for these contract rejection claims, to award the Growers a second time the same damages on a tort theory of liability would clearly result in the Growers receiving substantially different (and better) treatment than other, similarly situated creditors. Assuming for sake of argument that general unsecured creditors in the case were paid pro rata (therefore receiving less than a 100% recovery on their claims), a

---

[12] It is worth noting that Debtors' rejection of the Growers' contracts still in existence postpetition could be accomplished only with court approval. *See* 11 U.S.C. § 365(a). As such, none of the Growers' whose contracts were rejected postpetition could maintain a tort claim against Debtors with respect to this action; to do so necessarily implies that the court's order approving the rejection was somehow improper or illegal. It would thus be inequitable for any of the Growers whose contracts were terminated prepetition for economic necessity to maintain tort claims based on such termination, since the Growers whose contracts were terminated postpetition are precluded from doing so.

10

double recovery (or doubled claim) for the Growers would result in a windfall at the expense of the other unsecured creditors. Such a result runs contrary to the Congressional policy that "equity is equality" – that is, similarly situated creditors should be treated the same. *See, e.g.*, *In re Elcona Homes Corp.*, 863 F.2d 483, 484 (7th Cir. 1988). The fact that, in the case at bar, Debtors' plan of reorganization provided for full payment of unsecured creditors' claims (rather than a pro rata distribution) does not alter the court's conclusion that the Growers are entitled only to a single recovery of their damages.

In holding as it does, the court in no way suggests that the Growers are entirely prohibited from bringing any of the claims excepted from the Release Agreement; Debtors admitted as much when they stated that, assuming (for sake of argument) that Debtors used misrepresentations to induce the Growers to invest in or upgrade their chicken farms, "[the Growers'] investment (less profits) would represent the damages proximately caused by the representations" – i.e., the Growers would be entitled to reimbursement for out-of-pocket expenses, but not expectation damages. Brief to Reply to Growers' Response at 2. To the extent that the Proofs of Claim and the Administrative Expense Claims request damages other than Future Damages, the Growers may indeed be due recovery. But where, as here, an injured party enters into a contract to receive compensation in full satisfaction of certain damages, that party must be deemed whole with respect to those damages and be prohibited from seeking further redress. As the Court of Appeals for the Ninth Circuit recently noted, "[a]t some point, litigation must come to an end."[13] For the Growers' claims for Future Damages, that time is now.

---

[13] *Facebook, Inc. v. Pac. Nw. Software, Inc.*, --- F.3d ----, Nos. 08-16745, 08-16873, 09-15021, 2011 WL 1346951, at *6 (9th Cir. Apr. 11, 2011).

**III. CONCLUSION**

For the foregoing reasons, the Motion is GRANTED, and, to the extent they request Future Damages, the Siler City Growers' proofs of claim and the Administrative Expense Claims are DENIED.

It is so ORDERED.

# # # END OF MEMORANDUM OPINION AND ORDER # # #